**No. 22-11242**

In the

# United States Court of Appeals

for the

# Fifth Circuit

---

SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff – Appellee,*
v.
TIMOTHY BARTON,
*Defendant – Appellant.*

---

From the United States District Court
for the Northern District of Texas
Honorable Brantley Starr, U.S. District Judge
Cause No. 3:22-cv-2118-X

---

**RECEIVER'S MOTION TO BE RECOGNIZED
AS THE APPELLEE OR AS A PARTY IN INTEREST, OR
ALTERNATIVELY, MOTION TO INTERVENE**

---

BROWN FOX PLLC
Charlene C. Koonce
State Bar No.11672850
8111 Preston Road, Suite 300
Dallas, TX 75225
T: (214) 327-5000
F: (214) 327-5001
charlene@brownfoxlaw.com
*Counsel for Receiver Cortney C. Thomas*

Cortney C. Thomas, the Court-appointed Receiver ("Receiver"), *as the only movant that requested the relief at issue in the order on appeal and the only party whose interests are prejudiced by this appeal*, seeks amendment of the docket recognizing the Receiver as Appellee, recognition as a Party in Interest, or alternatively, leave to intervene.  Ultimately, the Receiver seeks dismissal of this appeal for lack of jurisdiction, or alternatively, a judgment affirming the Order. The Receiver respectfully shows the Court as follows:

## SUMMARY

This appeal seeks interlocutory review of the Order Granting Motion to Ratify Agreement, (the "Order") (Dkt. 105), issued based on a motion filed solely by the Receiver, Dkt. No. 95.  *See Notice of Appeal.*  Nonetheless, the docket in the appeal reflects the SEC as the appellee and does not include the Receiver,[1] and thus as docketed, the Receiver cannot defend the Order issued in response to his motion.

## BACKGROUND

1.    On October 18, 2022, the district court appointed Cort Thomas as Receiver for certain defendant entities, the assets of certain relief defendants, and

---

[1] The Receiver was also omitted from Appeal No. 22-11132, but was permitted to file an amicus brief, responding to Appellants' Emergency Motion to Stay the Receivership. He was also omitted from the docket in Appeal No. 22-11226, but was granted leave to file an amicus motion to dismiss and designated the Appellee based on a motion nearly identical to this one. Appeal No. 23-10046, which is an appeal of an order granting a motion filed by the Receiver, likewise omits the Receiver from the docket.

"any other entities that Defendant Timothy Barton directly or indirectly controls…" (the "Receivership Entities") (Dkt. 29).

2.      In the course of his appointment, the Receiver sought to compromise certain claims held by or asserted against various Receivership Entities, and reached a settlement agreement with DLP Capital, Inc. and related entities.  The Receiver filed a Motion to Ratify Agreement with DLP Capital and Other DLP Entities (the "Motion").  (Dkt. 95).

3.      Appellant Timothy Barton filed a Response and Objection to the Motion, (Dkt. 106).

4.      The SEC, docketed in this appeal as the Appellee, did not file anything related to the Motion because *the SEC was neither the movant, nor procedurally "interested" in the outcome*.

5.      On December 21, 2022, the District Court granted the Motion.  Two days later, Barton filed his Notice of Interlocutory Appeal regarding the Order.

6.      The Receiver conferred with Appellant regarding this Motion, and Appellant ignored the conferences.

7.      The SEC is unopposed.

8.      A copy of the Receiver's Motion to Dismiss, drafted solely by the Receiver's counsel, is attached to this Motion.

## **ARGUMENT**

The Receiver should be designated as the Appellee and heard regarding Appellant's challenge to an order granting relief requested by the Receiver.  Based on the terms of the Receivership Order, the Receiver holds all Receivership Property and is authorized to, "without further Order of th[e] Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property."[2]  *See also SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) ("In general, the Receiver has wide powers to acquire, organize and distribute the property of the receivership."). His unique and sole interest is undisputed.  Designating the Receiver as the appellee or otherwise as an interested party is therefore appropriate, particularly since the appeal addresses an Order issued solely on the Receiver's Motion.

Additionally, the Receiver is the only party prejudiced by the appeal, and therefore interested in challenging it. DLP has already paid the settlement payment, and the settlement ratified by the Order is fully performed. Thus, significant injury to the Receivership Estate would occur if the appeal is successful.

---

[2] Order Appointing Receiver [Dkt. 29] ¶39.

Nor would including the Receiver be novel or inappropriate. For instance, Appeal No. 09-40641, *Crawford v. Sillette,* was docketed reflecting the receiver in that case as an interested party, although the underlying case clearly reflected the CFTC as the Plaintiff. An order obtained by the receiver was at issue in the *Crawford* appeal. Similarly, in *Zacarias v. Stanford Int'l Bank, Ltd.*, Appeal No. 17-11073, and many other *Stanford*-related appeals, the receiver was identified in the docket as a ("null") appellee and permitted to file responsive motions and briefs. *See also Helt v. Sethi Petroleum, L.L.C.*, No. 20-40240, 2022 WL 127977, at *1 (5th Cir. Jan. 13, 2022) (designating receiver, Helt, as the Appellee in SEC enforcement case involving interlocutory appeal of denial of motion to intervene by party who sought to challenge receiver's authority over certain receivership entities as assets); *SEC v. Res. Dev. Intern.*, 291 Fed. Appx. 660, 661 (5th Cir. 2008) (case docketed reflecting receiver as "Counter-Defendant Appellee" where order at issue, finding appellant in contempt, was issued based on receiver's motion).

A similar docketing practice was followed by the Seventh Circuit in *SEC v. Ventus Holdings*, Appeal No. 21-2664, where that receiver was designated as "Court-Appointed Receiver-Appellee," while the SEC, the Plaintiff, was identified as the "Plaintiff-Appellee." In the *Ventus* appeal, the receiver filed motions and briefs.

In the alternative, to the extent joinder or intervention rather than a docket correction is necessary,[3] the Receiver satisfies the standards for either. Rule 19 requires joinder of persons who "claim an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest." FED. R. CIV. P. 19(a)(1)(B)(ii). The Receiver easily satisfies this standard. *See Schutten v. Shell Oil Co.*, 421 F.2d 869, 874 (5th Cir. 1970) (considering prejudice, from a pragmatic perspective, to interested person not joined). The SEC does not represent the Receivership Estate's interest and suffers no loss with respect to the Order at issue.

Similarly, the Receiver satisfies the standards for intervention, which require only (1) a timely application; (2) the applicant's interest relating to the property or transaction that is the subject of the action; (3) disposition of the action may, from a practical perspective, impair or impede the applicant's ability to protect his interest; and (4) the applicant's interest are not adequately represented by the existing parties. *Texas v. U.S.*, 805 F.3d 653, 657 (5th Cir. 2015). *See* FED. R. CIV. P. 24(a). Courts liberally construe the four factors governing intervention, to "allow intervention where no one would be hurt and the greater justice could be attained." *Id.* at 656-67

---

[3] Correcting the docket to reflect the Receiver's *existing* inclusion in this matter does not require joinder. In an abundance of caution, however, in the event the Court concludes Rule 19 or Rule 24 govern, the Receiver satisfies both rule's standards.

(quotations omitted).  Here, no one is harmed by the Receiver's inclusion in this appeal, but his absence potentially harms the investors whose interests he serves in having obtained the Order that is being appealed.

Adding insult to injury with respect to his exclusion from the docket, as reflected in the attached Motion which the Receiver seeks leave to file upon his inclusion in the docket, no interlocutory jurisdiction exists for this appeal.  The Eleventh Circuit addressed the jurisdictional issue succinctly when comparing the scope of 28 U.S.C. §§ 1292(a)(2) and 1292(a)(1) which govern interlocutory appeals of temporary restraining orders and orders related to receiverships:

> "That provision [1292(a)(1)] more broadly confers jurisdiction over orders 'granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.' 28 U.S.C. § 1292(a)(1). It thereby expressly authorizes immediate appeals not only of front- and back-end orders 'granting,' 'refusing,' or 'dissolving' injunctions, but also of mid-stream orders 'continuing,' 'modifying,' or 'refusing to dissolve or modify' them. The contrast is unmistakable. Had Congress wanted to authorize the same robust interlocutory appellate review of interim receivership-related orders, it could have included similar language in § 1292(a)(2). It didn't, and its decision in that respect is 'telling.'"

*SEC v. Complete Bus. Sols. Group, Inc.*, 44 F.4th 1326, 1331–32 (11th Cir. 2022);

*see also, US v. Solco I, LLC*, 962 F.3d 1244, 1250 (10th Cir. 2020) ("Courts narrowly construe § 1292(a)(2) to permit appeals only from the three discrete categories of receivership orders specified in the statute, namely [1] orders appointing a receiver, [2] orders refusing to wind up a receivership, and [3] orders refusing to take steps to

accomplish the purposes of winding up a receivership.") (internal quote omitted));

*see also Netsphere, Inc. v. Baron*, 799 F.3d 327, 331-32 (5th Cir. 2015) (every circuit to address the meaning of § 1292(a)(2)'s 'refusing orders' interprets it to "permit[ ] appeals only from orders 'refusing ... to take steps to accomplish the purposes of [winding up receiverships].'").

This appeal does not fall within any of the three designated categories of receivership orders for which interlocutory jurisdiction exists, and the Receiver requests leave to fully brief the absence of this Court's jurisdiction.

## <u>CONCLUSION</u>

The Receiver is *the only* proper Appellee based on the appeal of an order granting a motion filed by the Receiver, in which the SEC did not participate. Accordingly, the Receiver should be named as an Appellee, a Party in Interest, an Intervenor, or alternatively, permitted to file the attached motion as an amicus.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

    *Attorneys for Receiver Cortney C. Thomas*

## **CERTIFICATE OF CONFERENCE**

I certify that as counsel for the Receiver, I conferred with Appellant's counsel regarding the relief requested in this Motion.  No response was received.  The SEC is unopposed.

*/s/ Charlene C. Koonce*

Charlene C. Koonce

## **CERTIFICATE OF COMPLIANCE**

1.     I certify that this Motion complies with the type-volume limit of FED. R. APP. P. 21(d) because, excluding the words that need not be counted, it contains 1,567 words.

2.     This Motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

*/s/ Charlene C. Koonce*

Charlene C. Koonce

## <u>CERTIFICATE UNDER ECF FILING STANDARDS</u>

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I certify that (1) required privacy redactions have been made (see Local Rule 25.2.13); (2) the electronic submission is an exact copy of the paper document (*see* Local Rule 25.2.1); and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

# RECEIVER'S MOTION TO DISMISS

No. 22-11242

# In the
# United States Court of Appeals
## for the
# Fifth Circuit

———————

SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff – Appellee,*
v.
TIMOTHY BARTON,
*Defendant – Appellant.*

———————

From the United States District Court
for the Northern District of Texas
Honorable Brantley Starr, U.S. District Judge
Cause No. 3:22-cv-2118-X

———————

**Receiver's Motion to Dismiss**

———————

Brown Fox PLLC
Charlene C. Koonce
State Bar No.11672850
8111 Preston Road, Suite 300
Dallas, TX 75225
T: (214) 327-5000
F: (214) 327-5001
charlene@brownfoxlaw.com

*Counsel for Receiver Cortney C. Thomas*

# I.    <u>INTRODUCTION</u>

On December 23, 2022, Appellant Timothy Barton filed a notice of appeal of the Order Granting Receiver's Motion to Ratify Agreement with DLP Capital and Other DLP Entities (the "DLP Order").  No appellate jurisdiction exists for an interlocutory appeal of the DLP Order and the Receiver accordingly moves the Court to dismiss this appeal. In support, he respectfully shows the Court as follows:

# II.    <u>BACKGROUND</u>

The SEC filed suit against Barton for securities fraud. Dkt.1[1]  Through its investigation, the SEC discovered "Barton had been commingling, transferring, dissipating, and encumbering investor funds and assets purchased with investor funds," while at the same time using investor funds to "pay personal expenses of Barton and his family, including exorbitant credit card bills, rent, and to buy a plane." Dkt. 6 at 2, 7.  To preserve the limited assets available to repay the investors whose funds Barton had misappropriated, the SEC filed a Motion for Appointment of Receiver ("Motion to Appoint").  Dkt. 6.[2]

On October 18, 2022, the District Court entered the Order Appointing Receiver ("Receivership Order") Dkt. 29.  The factual basis for the Receivership

---

[1] References to the District Court's docket are referenced above as "Dkt._."

[2] Barton was also indicted on seven counts of wire fraud, one count of conspiracy to commit wire fraud, and one count of securities fraud due to his alleged misuse of over $26 million acquired from investors.

Order was Barton's misappropriation of investor funds, which the SEC's evidence demonstrated he misused to, "among other things, purchase properties in the name of other entities he controlled, pay undisclosed fees and commissions, pay expenses associated with unrelated real estate development projects, and fund his lifestyle." Dkt. 6 at 1; Dkt. 7 at 10–15.

The Receivership Order directs the Receiver to "[e]nter into and cancel contracts . . . as the Receiver deems necessary or advisable" and "[t]o pursue, resist, defend, compromise or otherwise dispose of all . . . claims[] and demands which may now be pending or which may be brought by or asserted against the Receivership Entities."  Receivership Order ¶¶ 6(H), 6(J).  Further, the Receivership Order authorizes the Receiver to, "without further Order of th[e] Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property." *Id.* at ¶39.

On December 15, 2022 the Receiver filed a Motion to Ratify Agreement with DLP Capital and Other DLP Entities ("Motion to Ratify"). Dkt. 95.  The agreement underlying the Motion to Ratify compromised various contractual rights and obligations between various Receivership Entities and DLP Capital and its related entities (the "DLP Entities").  While the express terms of the Receivership Order did

not require the Receiver to obtain Court approval of the Motion to Ratify, the DLP Entities requested such ratification prior to making the payments required by the agreement.

Following a response and objection filed by Defendant Barton, (Dkt. 106) the District Court granted the Motion to Ratify.  Dkt. 109.  A true and correct copy of the Motion to Ratify and the DLP Order are attached to this Motion.

On December 21, 2022, Barton filed a notice of appeal, seeking this Court's review of the DLP Order.  Dkt. 112.  On December 28, 2022, Barton also filed a Motion to Stay the Court's Order Granting the Motion to Ratify (Dkt. 115), regarding which the district court ordered expedited briefing. Dkt. 115.  The Receiver filed a verified Response, providing additional arguments in support of the DLP Order.  Dkt. 119.  In his Response, the Receiver provided evidence that the settlement was fully performed leaving nothing for the Court to stay. *Id.*  Barton nonetheless filed a Reply, (Dkt. 125) and the Motion is pending.

Because no jurisdiction exists for this interlocutory appeal, the Receiver moves to dismiss it.

## III.    <u>ARGUMENT</u>

"Congress has given the courts of appeals jurisdiction over interlocutory appeals only in certain, limited circumstances."  *Complaint of Ingram Towing Co.*,

59 F.3d 513, 515 (5th Cir. 1995). The exceptions are found at 28 U.S.C. § 1292,[3] with section 1292(a)(2) governing appeals of certain orders related to receiverships. Although the statue is not a model of clarity, it does not provide appellate jurisdiction for "mid-stream" orders issued in the ordinary course of a receivership, like the DLP Order.

"Courts narrowly construe § 1292(a)(2) 'to permit appeals only from the three discrete categories of receivership orders specified in the statute, namely [1] orders appointing a receiver, [2] orders refusing to wind up a receivership, and [3] orders refusing to take steps to accomplish the purposes of winding up a receivership.'" *US v. Solco I, LLC*, 962 F.3d 1244, 1250 (10th Cir. 2020) (quoting *In re Pressman-Gutman Co.*, 459 F.3d 383, 393 (3d Cir. 2006)). Every circuit to address the meaning of § 1292(a)(2)'s 'refusing orders' interprets it to "permit[ ] appeals only from orders 'refusing . . . to take steps to accomplish the purposes of [winding up receiverships].'" *Netsphere, Inc. v. Baron*, 799 F.3d 327, 331-32 (5th Cir. 2015)

---

[3] "(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court; (2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property; (3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." 28 U.S.C. § 1292(a).

(quoting *SEC v. Am. Principals Holdings, Inc.*, 817 F.2d 1349 (9th Cir. 1987)) (brackets in original).

Because of the exceptional nature of the relief, Congress made orders appointing receivers immediately appealable. *Netsphere*, 799 F.3d at 332. However, orders "entered in the normal course of a receivership," are treated differently. *Id.* As recently observed by the Eleventh Circuit, the difference between 28 U.S.C. §§ 1292(a)(2) and 1292(a)(1) reveals the different treatment afforded interlocutory appeals of orders related to injunctions and orders related to receiverships:

> "That provision [1292(a)(1)] more broadly confers jurisdiction over orders 'granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.' 28 U.S.C. § 1292(a)(1). It thereby expressly authorizes immediate appeals not only of front- and back-end orders 'granting,' 'refusing,' or 'dissolving' injunctions, but also of mid-stream orders 'continuing,' 'modifying,' or 'refusing to dissolve or modify' them. The contrast is unmistakable. Had Congress wanted to authorize the same robust interlocutory appellate review of interim receivership-related orders, it could have included similar language in § 1292(a)(2). It didn't, and its decision in that respect is 'telling.'"

*SEC v. Complete Bus. Sols. Group, Inc.*, 44 F.4th 1326, 1331–32 (11th Cir. 2022).

"To conclude otherwise would mean that virtually any order of the receiver within the scope of its jurisdiction would be potentially appealable. Such a piecemeal approach to the appellate process would be disruptive and costly, both to the parties and the courts." *Id.* at 332–33 (internal quotation omitted); *see also United States v.*

*Antiques Ltd. P'ship*, 760 F.3d 668, 671–72 (7th Cir. 2014) (concluding no jurisdiction existed over order approving receiver's sale of property, because "that would both strain the statutory language and make anything the receiver did appealable immediately, which could flood the courts of appeals with interlocutory appeals."). This Court found it lacked jurisdiction over other orders issued in the course of a receivership, such as orders authorizing the execution of a lease by a receiver.[4]

The DLP Order does not fall within any of the three discrete categories of orders for which interlocutory jurisdiction exists. The DLP Order approves a purely administrative matter, the compromise of certain rights and contractual obligations. Approval of a similar motion is likewise pending before the District Court. *See* Dkt. 143. More will likely be filed. Entertaining this appeal will open the flood gates in this case, and in future receiverships, for Defendant Barton to appeal *every single administrative order.* Indeed, Defendant Barton has indicated his intent to do just that, by appealing the Order Governing Administration of Receivership Estate in Appeal No. 22-11132, and appealing an Order Approving the Sale of Real Property, Dkt. 104, in Appeal No. 22-11226.

The Court should dismiss this appeal.

---

[4] *See Belleair Hotel Co. v. Mabry*, 109 F.2d 390, 391 (5th Cir. 1940) ("The order appealed from dealt with an administrative matter within the discretion of the district court, and it does not fall within that class of interlocutory orders from which an appeal may be taken.").

## IV.    <u>CONCLUSION</u>

The Receiver respectfully requests that the Court dismiss this appeal for lack of jurisdiction and requests such other relief to which he may show himself entitled.

Respectfully submitted,

By: _/s/ Charlene C. Koonce_
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

_Attorneys for Receiver Cortney C. Thomas_

## CERTIFICATE OF COMPLIANCE

1.     I certify that this Motion complies with the type-volume limit of FED. R. APP. P. 21(d) because, excluding the words that need not be counted, it contains 1,537 words.

2.     This Motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

*/s/ Charlene Koonce*
Charlene Koonce


## CERTIFICATE UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I certify that (1) required privacy redactions have been made (see Local Rule 25.2.13); (2) the electronic submission is an exact copy of the paper document (*see* Local Rule 25.2.1); and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Charlene Koonce*
Charlene Koonce

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | No. 3:22-cv-2118-X |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (A/K/A MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § § | |

## RECEIVER'S VERIFIED MOTION TO RATIFY AGREEMENT WITH DLP CAPITAL AND OTHER DLP ENTITIES AND BRIEF IN SUPPORT

Cort Thomas, the Receiver appointed in the above-styled case, moves the Court for an Order approving the Receiver's settlement agreement (the "Agreement") with DLP Real Estate Capital, Inc. ("DLP Capital"); DLP Winter Haven Ventures, LLC ("DLP Winter Haven"); Orchard Farms Ventures, LLC ("Orchard Farms Ventures"); and Marine Creek Ventures, LLC ("Marine Creek Ventures") and collectively with DLP Capital, DLP Winter Haven, and Orchard Farms Venture, the "DLP Entities") and would respectfully show the Court as follows:

## I.    INTRODUCTION

On October 18, 2022, the Court entered its Order Appointing Receiver [Dkt. 29] (the "Receivership Order"), which named Cort Thomas as Receiver for the Receivership Entities[1] and directed him to take custody, control, and possession of all Receivership Property.  Receivership Order ¶ 6(B).  The Receivership Order also directs the Receiver to "[e]nter into and cancel contracts . . . as the Receiver deems necessary or advisable" and "[t]o pursue, resist, defend, compromise or otherwise dispose of all . . . claims[] and demands which may now be pending or which may be brought by or asserted against the Receivership Entities."  Receivership Order ¶¶ 6(H), 6(J).  Finally, the Receivership Order gives the Receiver the ability, "without further Order of th[e] Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.  *Id*. ¶ 39.

The instant Motion relates to the Receiver's efforts to compromise various contractual rights and obligations between various Receivership Entities and the DLP Entities.  While the express terms of the Receivership Order outlined above do not require the Receiver to obtain Court approval of these efforts, he nevertheless seeks the Court's ratification of the Agreement here because the DLP Entities have requested such ratification prior to making the payments outlined below and in the Agreement.

## II.    BACKGROUND

### A.    The DLP Transactions

Certain Receivership Entities and the DLP Entities entered into a series of transactions in late 2021:

---

[1] Capitalized terms used but not defined herein shall have the meanings provided in the Receivership Order.

First, on or about October 11, 2021, DLP Winter Haven acquired 3800 Avenue J, Winter Haven FL 33881 from AVG WEST, LLC (f/k/a JMJ Acquisitions LLC), a Receivership Entity. The purchase price ($2,000,0000) and the developer fee ($2,200,000) were paid in full, and it appears that transaction was complete as of approximately May 2022 (collectively, the "Winter Haven Transaction").

Second, on or about December 22, 2021, Orchard Farms Ventures acquired approximately 100.223 acres that are generally located along Shelby Road, west of Rendon Road, in Fort Worth, Texas from Orchard Farms Village, LLC ("Orchard Farms Village"), a Receivership Entity. The purchase price ($7,856,500) was paid in full.  In addition to the sale of the real property, Orchard Farms Ventures engaged Orchard Farms Developments, LLC ("Orchard Farms Development"), a Receivership Entity, to provide certain development services (the "Orchard Farms Development Agreement").  Moreover, via a separate Participation Agreement dated December 30, 2021, Orchard Farms Ventures granted Orchard Farms Village a participation fee payable upon substantial completion or as otherwise accelerated (the "Orchard Farms Participation Agreement").  These agreements are collectively referred to herein as the "Orchard Farms Transaction."

Third, on or about December 23, 2021, Marine Creek Ventures acquired approximately 40.20 acres that are generally located at the intersection of Loop 820 and Huffines Boulevard in Fort Worth, Texas from Mansions Apartment Homes At Marine Creek, LLC ("Mansions"), a Receivership Entity. The purchase price ($10,000,000) was paid in full.  In addition to the sale of the real property, Marine Creek Ventures engaged Marine Creek Developments, LLC ("Marine Creek Development"), a Receivership Entity, to provide certain development services (the "Marine Creek Development Agreement").  Marine Creek Ventures also engaged La Jolla

Construction Management, LLC ("La Jolla"), another Receivership Entity, to provide construction management services (the "Marine Creek Construction Management Agreement"). Moreover, via a separate Participation Agreement signed in January 2022, Mansion Creek Ventures granted Marine Creek SP LLC a participation fee payable upon substantial completion or as otherwise accelerated (the "Marine Creek Participation Agreement"). These agreements are collectively referred to herein as the "Marine Creek Transaction."

The Winter Haven Transaction, the Orchard Farms Transaction, and the Marine Creek Transaction are collectively referred to herein as the "DLP Transactions."

**B.      Negotiations with the DLP Entities.**

Shortly after receiving his appointment and in furtherance of the mandates in the Receivership Order, the Receiver began contacting various individuals and entities with ties to the Receivership Entities, including the DLP Entities. The Receiver quickly learned that, well in advance of the entry of the Receivership Order, Defendant Barton and the contractually-obligated Receivership Entities had become unresponsive and began defaulting on their ongoing obligations to the DLP Entities under the DLP Transactions. Indeed, on October 18, 2022, DLP sent letters to Orchard Farms Development, Marine Creek Development, and La Jolla that those Receivership Entities (i) were in breach under the Orchard Farms Development Agreement, Marine Creek Development Agreement, and the Marine Creek Construction Management Agreement, respectively; and (ii) afforded said Receivership Entities 30 days to cure such breach.

On or about October 31, 2022, the Receiver met with counsel to the DLP Entities to discuss the Receivership Entities' pre-Receivership breaches of these agreements and whether continuation under the Orchard Farms Development Agreement, Marine Creek Development Agreement, and the Marine Creek Construction Management Agreement was feasible. The

parties agreed that termination of these agreements was necessary and further agreed that the DLP entities should proceed to mitigate their damages by engaging suitable replacement service providers.

After the October 31 meeting, the Parties engaged in protracted settlement discussions, with the exchange of multiple offers and counter-offers, before ultimately reaching an agreement in principle on or about December 6, 2022 regarding the terms under which the agreements would be terminated. The Court, over Barton's objection, entered its Order Granting Receiver's Motion to Supplement Order Appointing Receiver [Dkt. 88] on December 13, 2022, which confirmed that Marine Creek SP, LLC is a Receivership Entity.

## III.    ARGUMENT

To avoid the expense and uncertainty of potential litigation, as well as the continuing damages and uncertainty surrounding the Orchard Farms Development Agreement, Marine Creek Development Agreement, and the Marine Creek Construction Management Agreement, the Receiver and the DLP Entities agreed to fully settle any claims each party has under the DLP Transactions by the DLP Entities paying to the Receiver the sum of $750,000 (the "Settlement Payment"). A true and correct copy of the Settlement Agreement between the Receiver and the DLP Entities is attached hereto Exhibit A. Pursuant to the terms of the Settlement Agreement, the Settlement Payment will be made by the DLP Parties to the Receiver within fifteen (15) days after this Court ratifies the Agreement.

The Receiver believes the Agreement with the DLP Entities is in the best interest of the receivership because, among other things, the Agreement

> (1) brings much needed capital into the Receivership Estate, which will enable the Receiver to continue managing the Receivership Assets in accordance with the Receivership Order;

(2) minimizes the amount of monetary damages owed to the DLP Entities as a result of the Receivership Entities' pre- and post-receivership breaches of the Orchard Farms Development Agreement, Marine Creek Development Agreement, and the Marine Creek Construction Management Agreement, which damages continued to accrue on a daily basis;

(3) similarly minimizes the attorneys' fees and expenses that would otherwise be incurred by the Receiver in pursuit or defense of any claims surrounding the DLP Transactions;

(4) avoids the uncertainty surrounding the value of the Receivership Entities' participation in the properties given (a) the current instability in the market and the economy at large, (b) the delays in construction on the properties, and (c) the varying amounts of debt on the properties;

(5) perhaps most importantly, maximizes the value received by the Receivership because (a) the Participation Agreements only entitle the Receivership Entities to a percentage of the "Achieved Increased Value" after the sale of the properties, (b) limited construction has occurred on the properties to date, and thus substantial increases in value have not yet occurred, (c) nevertheless, the DLP Entities have agreed to apply a valuation methodology that estimates what the value of the project will be upon stabilization and then discounts that value to present value, (d) one real estate consultant who advised the Receiver has indicated that the valuation methodology and execution of that methodology by DLP Capital were both reasonable, and yet (e) the Settlement Payment still greatly exceeds this discounted income capitalization approach; and

(6) reviewing the totality of the situation from a position of equity, the Participation Agreements appear to have been designed to reward Defendant Barton and the Receivership Entities for their efforts in developing and managing construction of the properties; however, such work did not occur in the past and cannot occur moving forward.

## IV.    CONCLUSION

In light of the foregoing, the Receiver respectfully requests that the Court enter an Order ratifying the Agreement with the DLP Entities and further grant the Receiver such other and further relief to which the Receiver may be justly entitled.

December 14, 2022                                   Respectfully submitted,

**RECEIVER CORTNEY C. THOMAS**

*/s/ Cortney C. Thomas*
Cortney C. Thomas
  State Bar No. 24075153
  cort@brownfoxlaw.com
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Fax: (214) 327-5001

## <u>VERIFICATION</u>

My name is Cortney C. Thomas.  I am over the age of 18 and am fully competent to make this verification. I declare under penalty of perjury that the facts stated above are within my personal knowledge and are true and correct.

*/s/ Cortney C. Thomas*
Cortney C. Thomas

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on December 14, 2022, counsel for the Receiver conferred via email with counsel for Plaintiff and Defendants regarding the relief requested above. The SEC and Defendant Fu are unopposed. Counsel to Defendants Barton and Wall have not responded as of the filing of this Motion, and thus the Receiver assumes that they are opposed.

*/s/ Cortney C. Thomas*
Cortney C. Thomas

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

VS.                                                                         CASE NO. 3:22-CV-2118-X

TIMOTHY BARTON, ET AL.,

    Defendants.

## SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

THIS SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS ("*Agreement*") is made and entered into by and between Cortney C. Thomas in his capacity as the Court-Appointed Receiver over the estate of the Receivership Entities, as identified in the Order Appointing Receiver dated October 18, 2022 (the "*Receivership Order*"), the Order Granting Receiver's Motion to Supplement Order Appointing Receiver dated November 16, 2022, and the Order Granting Receiver Motion to Supplement Order Appointing Receiver dated December 13, 2022, in the above captioned matter (the "*Receiver*"), including without limitation the entities identified on Exhibit A, attached hereto (collectively, the "*Receivership Entities*"); DLP Real Estate Capital, Inc., a Florida corporation ("*DLP Capital*"); DLP Winter Haven Ventures, LLC, a Florida limited liability company ("*DLP Winter Haven*"); Orchard Farms Ventures, LLC, a Florida limited liability company ("*Orchard Farms Ventures*"); and Marine Creek Ventures, LLC, a Delaware limited liability company ("*Marine Creek Ventures*") and collectively with DLP Capital, DLP Winter Haven, and Orchard Farms Venture, the "*DLP Entities*"). Each of the Receiver, the Receivership Entities and the DLP Entities is sometimes referred to herein as a "*Party*" and collectively as the "*Parties*").

WHEREAS, DLP Winter Haven acquired 3800 Avenue J, Winter Haven FL 33881 from AVG WEST, LLC (f/k/a JMJ Acquisitions LLC), a Receivership Entity, on October 11, 2021. The purchase price ($2,000,0000) and the developer fee ($2,200,000) have been paid in full.  That transaction is complete as of approximately May 2022 (collectively, the "*Winter Haven Transaction*").

WHEREAS, Orchard Farms Ventures acquired approx. 100.223 acres, generally located along Shelby Road, west of Rendon Road, City of Fort Worth, County of Tarrant, State of Texas from Orchard Farms Village, LLC ("*Orchard Farms Village*"), a Receivership Entity, on December 22, 2021. The purchase price ($7,856,500) was paid in full.  Pursuant to that certain Participation Agreement dated December 30, 2021, Orchard Farms Ventures granted Orchard Farms Village a participation fee payable upon substantial completion or as otherwise accelerated in accordance therewith (the "*Orchard Farms Participation Agreement*"). Pursuant to that certain Development Agreement dated December 30, 2021, Orchard Farms Ventures engaged Orchard Farms Developments, LLC ("*Orchard Farms Development*"), a Receivership Entity, to provide certain development

67624767;5

services in accordance therewith (the "***Orchard Farms Development Agreement***"). The instrument of grant conveying the acquired property to Orchard Farms Ventures erroneously failed to include approx. 288 square feet (the "***OF Strip***") (collectively, the "***Orchard Farms Transaction***").

WHEREAS, Marine Creek Ventures acquired approx. 40.20 acres, generally located at the intersection of Loop 820 and Huffines Boulevard, City of Fort Worth, County of Tarrant, State of Texas, from Mansions Apartment Homes At Marine Creek, LLC ("***Mansions***"), a Receivership Entity, on December 23, 2021. The purchase price ($10,000,000) was paid in full. Pursuant to that certain Participation Agreement dated January ___, 2022, Mansion Creek Ventures granted Mansions a participation fee payable upon substantial completion or as otherwise accelerated in accordance therewith the (the "***Marine Creek Participation Agreement***"). Pursuant to that certain Development Agreement dated January ___, 2022, Marine Creek Ventures engaged Marine Creek Developments, LLC ("***Marine Creek Development***"), a Receivership Entity, to provide certain development services in accordance therewith (the "***Marine Creek Development Agreement***"). Pursuant to that certain Construction Management Agreement dated January ___, 2022, Marine Creek Ventures engaged La Jolla Construction Management, LLC ("***La Jolla***"), a Receivership Entity, to provide construction management services in accordance therewith (the "***Marine Creek Construction Management Agreement***")(collectively, the "***Mansions Creek Transaction***" and collectively with the Winter Haven Transaction and Orchard Farms Transaction, the "***DLP Transactions***")).

WHEREAS, Timothy Barton and the Receivership Entities became unresponsive and began defaulting on their ongoing obligations to the DLP Entities well in advance of the Receiver's appointment. On October 18, 2022, DLP notified Orchard Farms Development, Marine Creek Development, and La Jolla that they (i) were in breach under the Orchard Farms Development Agreement; Marine Creek Development Agreement and the Marine Creek Construction Management Agreement, respectively; and (ii) afforded said Receivership Entities 30 days to cure such breach.

WHEREAS, the Receivership Order gives the Receiver the ability, "without further Order of th[e] Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property," as well as the general powers to "[e]nter into and cancel contracts . . . as the Receiver deems necessary or advisable" and "[t]o pursue, resist, defend, compromise or otherwise dispose of all . . . claims[] and demands which may now be pending or which may be brought by or asserted against the Receivership Entities." Receivership Order ¶¶ 6(H), 6(J), 39.

WHEREAS, On October 31, 2022, the Parties discussed whether continuation under the Orchard Farms Development Agreement, Marine Creek Development Agreement, and the Marine Creek Construction Management Agreement was feasible, agreed that these agreements likely needed to be terminated, and further agreed thatthe DLP entities should proceed to mitigate their damages by engaging suitable replacement service providers.

WHEREAS, each of DLP Capital and the Receiver have independently reviewed the Orchard Farms Participation Agreement and the Mansion Creek Participation Agreement and assessed the value of the Receivership Entities' interests thereunder.

WHEREAS, there are bona fide disputes, disagreements, and controversies between the Parties pertaining to the DLP Transactions; the Parties desire to avoid the trouble, expense and uncertainty of litigation, to terminate all past, present and potential controversies between them pertaining to the DLP Transactions, and to compromise and settle all of their differences pertaining to the DLP Transactions of any type; and the Parties wish to enter into a compromise agreement relating to the Orchard Farms Participation Agreement, the Mansion Creek Participation Agreement and all claims and alleged damages which were or could have been asserted by and among the Parties in connection with the DLP Transactions, without admission by any Party of the merits of the claims, demands, charges, and/or contentions of the others; and

NOW, THEREFORE, as material considerations and inducements to and for the execution of this Agreement, and in consideration of the mutual promises set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto and their respective past and present parents, subsidiaries, affiliates, predecessors, successors, directors, officers, agents, representatives, employees, and assigns, and their respective heirs, executives, administrators and personal representatives, conditioned on the approval of this Agreement by the Court, hereby contract, covenant, and agree as follows:

1.    Within ten (10) days of the execution of this Agreement, Receiver will file a Motion for Ratification of this Agreement ("***Motion for Ratification of the Agreement***"), seeking approval of the Court of the terms contained within the Agreement. The Parties agree that the Receiver need not obtain approval or ratification of the Agreement pursuant to the Receivership Order as outline above but nevertheless agree to seek ratification of the Agreement as outlined herein.

2.    The Effective Date of this Agreement shall be the date the Court ratifies this Agreement and enters an order granting the Motion for Ratification of the Agreement.

3.    Within fifteen (15) days of the Effective Date, DLP Capital shall:

(a) remit or cause its affiliate to remit $750,000.00 to the Receiver (the "***Cash Consideration***"); and

(b) file in the Property Records of Tarrant County, Texas, a non-material correction pursuant to §5.028, Texas Property Code substantially in the form attached hereto as Exhibit B (the "**Corrective Affidavit**").

4.    Promptly upon receipt of the Cash Consideration, but in no event more than ten (10) days thereof, the Receiver on behalf of each Receivership Entity shall file instruments in the property records of Tarrant County, Texas releasing and quit-claiming all participating interests in (a) the Orchard Farms property to Orchard Farms Ventures; and (b) the Mansion Creek property to Marine Creek Ventures.

The Parties hereby acknowledge and agree that they are entering this Agreement for the sole and exclusive purpose of compromising and settling any and all claims arising out of the DLP Transactions and that this Agreement is entered into in full and final settlement of all such alleged or unalleged claims or causes of action, as well as any and all alleged or unalleged damages relating thereto. The preceding sentence notwithstanding, all claims, rights, demands, debts, liabilities, attorneys' fees, controversies and causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, of any nature whatsoever whether sounding in tort, contract, statute or any other theory of liability pertaining to title of the conveyed property under any of the DLP Transactions (the "*Reserved Claims*") are expressly reserved and survive this Agreement.

The Parties further acknowledge and agree that they have entered into this Agreement for the purpose and intent of fully and finally compromising and resolving doubtful and disputed claims pertaining to the DLP Transactions by and between the Parties and to avoid the uncertainty of future litigation or arbitration. The Parties agree and understand that this is a compromise of doubtful and disputed claims, and that neither (a) the entry into this Agreement, nor (b) any recital contained herein, shall be construed or interpreted as an admission of liability by any party hereto.

By execution hereof, each Party represents, covenants and warrants that: (a) it has not, in whole or in part, conveyed, assigned or in any manner transferred, or subrogated any claims arising out of the DLP Transactions, to any third party other than to their attorneys of record, and (b) its signatory hereto is authorized to act in the capacities indicated.

Conditioned on full performance by the Receivership Entities and the Receiver of the obligations of this Agreement, DLP Capital and each DLP Entity does hereby RELEASE, REMISE, CANCEL, ACQUIT and DISCHARGE any and all claims, rights, demands, debts, liabilities, attorneys' fees, controversies and causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, of any nature whatsoever whether sounding in tort, contract, statute or any other theory of liability which could be asserted by any DLP Entity against the Receivership Entities or the Receiver, its past or present parents, predecessors, subsidiaries or affiliates, and their respective past or present officers, directors, shareholders, partners, agents, employees, attorneys, accountants or representatives, and their respective heirs, executors, personal representatives, successors and assigns, and anyone claiming by, through or under any or all of them (collectively, the "*Receivership Affiliated Persons*"), arising out of the DLP Transactions, which existed or may have existed prior to the date of this Agreement, *provided however,* that nothing contained in this paragraph shall release any obligations arising out of this Agreement or the Reserved Claims.

Conditioned on full and timely performance by DLP Capital of the obligations of this Settlement Agreement, the Receivership Entities do hereby RELEASE, REMISE, CANCEL, ACQUIT and DISCHARGE any and all claims, rights, demands, debts, liabilities, attorneys' fees, controversies and causes of action, known or unknown, asserted or unasserted, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, of any nature whatsoever whether sounding in tort, contract, statute or any other theory of liability which could be asserted by a Receivership Entity against any DLP Entity, its past or present parents, predecessors,

subsidiaries or affiliates, and their respective past or present officers, directors, shareholders, partners, agents, employees, attorneys, accountants or representatives, and their respective heirs, executors, personal representatives, successors and assigns, and anyone claiming by, through or under any or all of them, including without limitation Barry W. DeGroot, Robert Peterson, and Donald Wenner (collectively, the "***DLP Affiliated Persons***"), arising out the DLP Transactions, which existed or may have existed prior to the date of this Agreement, including without limitation the participation fees under the Orchard Farms Participation Agreement and the Mansion Creek Participation Agreement; *provided however,* that nothing contained in this paragraph shall release any obligations arising out of this Agreement or the Reserved Claims.

Each Party completely and unconditionally releases and forever discharges each other from any claim that this Agreement was induced by any fraudulent or negligent act or omission, and/or resulted from any actual or constructive fraud, negligent misrepresentation, conspiracy, breach of fiduciary duty, breach of confidential relationship, or the breach of any other duty under law or in equity. The Parties expressly understand and agree that the exchange of releases does not apply to actions brought by any of them to enforce the terms of this Agreement or the Reserved Claims. The Parties shall reserve and each has reserved all rights against the other to enforce the terms of this Agreement and pursue the Reserved Claims.

The Parties hereby represent and confirm that they have not filed or otherwise initiated any pending lawsuit, complaint, charge, or other proceeding against each other in any local, state, or federal court or agency. The Parties each covenant and agree that they will not at any time hereafter commence, maintain, or prosecute any action at law or otherwise, or assert any claim, against the other for any actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, and demands released herein.

The Parties agree that the rights and obligations covered by this Agreement shall survive execution of these releases.

Receiver and the Receivership Entities further agree to DEFEND, INDEMNIFY AND HOLD HARMLESS the DLP Entities from any claim or cause of action of any kind filed or made against any of them which has been or may subsequently be brought by, through, or on behalf of a Receivership Entity and arising from any claim released under this Agreement. Each DLP Entities, likewise, agrees to DEFEND, INDEMNIFY AND HOLD HARMLESS the Receiver and the Receivership Entities from any claim or cause of action of any kind hereafter filed or made against any of them which has been or may subsequently be brought by, through, or on behalf of any DLP Entity and arising from any claim released under this Agreement. This indemnity is conditioned upon prompt notice by the party claiming a right to indemnity on any such claim to the party against whom indemnity is sought and the party against whom indemnity is sought being given the right to defend the claim on which indemnity is sought. The Parties warrant they are not presently aware of any facts that would give rise to a claim for indemnity under this Section. The right to indemnity in this Section is limited to the Parties, as herein defined, and shall not be construed as granting a right to indemnity in favor of any other entities or persons related to or affiliated with the released parties

All parties to this Agreement will bear their own attorney's fees, expenses and costs in this lawsuit.

The Parties further warrant and represent that they will cooperate fully and execute any and all supplementary documents and to take such additional actions which reasonably may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

If any single section or clause of this Agreement should be found unenforceable, it shall be severed and the remaining sections and clauses shall be enforced in accordance with the intent of this Agreement. Texas law shall govern the validity and interpretation of this Agreement.

The Parties agree that one or more waivers or breaches of any covenant, term, or provision of this Agreement by any party shall not be construed as a waiver of a subsequent breach of the same covenant, term, or provision, or as a waiver or breach of any other covenant, term, or provision.

This Agreement contains the entire understanding between the Parties and supersedes all prior agreements and understandings, oral or written, relating to the subject matter of this Agreement. The Parties expressly acknowledge and agree that no provisions, representations, or warranties whatsoever were made, express or implied, other than those contained in this Agreement and that they are not relying on any statement or communication from the other party other than those expressly contained in this Agreement in deciding to execute this Agreement. This Agreement shall not be modified, amended, or terminated unless such modification, amendment, or termination is executed in writing and signed by authorized representatives of the affected parties. The Parties hereby waive their right to make future oral agreements covering the same subject as this Agreement.

The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any party. Any ambiguity, doubt or question as to applicability of the Parties' respective releases contained in this Agreement shall be resolved in all events in favor of waiver, release, relinquishment and disavowal of any possible claims. The Parties agree that the waivers, releases, relinquishments and disavowals herein granted shall be with respect to claims, interests, rights, remedies and causes of action known or unknown, matured or unmatured, contingent or direct, existing or hereafter arising. The Parties acknowledge (after full consideration of the consequences and after being fully advised in the premises) that the waiver and relinquishment of their respective claims contained in this Agreement is full and complete, whether or not the factual basis for their respective claims or defenses are currently known to them.

The Parties, and each of them, hereby represent and certify that they: (1) have had an opportunity to read all of this Agreement; (2) have been given a fair opportunity to, and have been advised to, discuss and negotiate the terms of this Agreement by and through their legal counsel; (3) have been given a reasonable time to consider the Agreement; (4) understand the provisions of this Agreement; (5) have had ample opportunity to seek and have received advice from an attorney or other advisors regarding this Agreement or have otherwise waived their right to do so; (6) have determined that it is in their best interest to enter into this Agreement; (7) have not been influenced to sign this Agreement by any statement or representation by the other party or its legal counsel or other representative not contained in

**DLP SETTLEMENT AGREEMENT**                                          **PAGE 6 OF 7**

this Agreement; (8) have had sufficient time to investigate the existence of the claims and other rights hereby released and have satisfied themselves with respect to the same based upon their investigation and the advice of counsel, (9) are fully authorized to execute this Agreement in the capacities in which it is executed and (10) enter into this Agreement knowingly and voluntarily without coercion, duress, or fraud.

The Parties agree that this Agreement is supported by good, valuable, and sufficient consideration.

The Parties understand and agree that the facts in respect of which this Agreement is made may hereafter prove to be other than, or different from the facts now known by either of them or believed by either of them to be true as set forth in this Agreement. The Parties expressly accept and assume the risk of the facts proving to be so different, and each of the them agrees that all of the terms of this Agreement shall be, in all respects, effective and binding, and not subject to termination or rescission by either of them due to any such difference in facts.

The Parties agree that this Agreement may be signed in multiple counterparts, each of which shall be deemed an original for all purposes.

**The Receivership Entities,**

By: _____

Cortney C. Thomas, Receiver

THE STATE OF _Texas_ §

COUNTY OF _Dallas_ §

    BEFORE ME, the undersigned authority, on this day personally appeared, Cortney C. Thomas, known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE this _8th_ day of December, 2022.

_____

Notary Public, the State of _Texas_

KIMBERLEY OROURKE
Notary Public, State of Texas
Comm. Expires 05-16-2026
Notary ID 6283194

67624767;5

**DLP Real Estate Capital, Inc.,**
a Florida Corporation.

By:

Name: Barry W. DeGroot

Its:     Secretary

**THE STATE OF <u>FLORIDA</u>§**

**COUNTY OF <u>ST. JOHNS</u>§**

BEFORE ME, the undersigned authority, on this day personally appeared [x] by means of physical presence, Barry W. DeGroot, the Secretary of DLP Capital, known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 8th day of December 2022.

Sandra Lee Muise

Notary Public, the State of Florida

SANDRA LEE MUISE
Notary Public-State of Florida
Commission # HH 304384
My Commission Expires
August 23, 2026

**DLP Winter Haven Ventures LLC,**
a Florida limited liability company

By:

Name: Barry W. DeGroot
Its:    Vice President

## THE STATE OF FLORIDA§

## COUNTY OF ST. JOHNS§

BEFORE ME, the undersigned authority, on this day personally appeared [x] by means of physical presence, Barry W. DeGroot, the Vice President of DLP Winter Haven Ventures LLC known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 8ᵗʰ day of December 2022.

Sandra Lee Muise

Notary Public, the State of Florida

SANDRA LEE MUISE
Notary Public-State of Florida
Commission # HH 304384
My Commission Expires
August 23, 2026

**Orchard Farms Ventures, LLC,**
a Florida limited liability company

By: _____

Name: Barry W. DeGroot

Its:    Vice President **THE STATE OF <u>FLORIDA</u>§**

**COUNTY OF <u>ST. JOHNS</u>§**

BEFORE ME, the undersigned authority, on this day personally appeared [x] by means of physical presence, Barry W. DeGroot, the Vice President of Orchard Farms Ventures LLC known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 8th day of December 2022.

_____
Notary Public, the State of Florida

SANDRA LEE MUISE
Notary Public-State of Florida
Commission # HH 304384
My Commission Expires
August 23, 2026

**DLP SETTLEMENT AGREEMENT**

**Marine Creek Ventures, LLC,**
a Delaware limited liability company

By:

Name: Barry W. DeGroot
Its:     Vice President

## THE STATE OF <u>FLORIDA</u>§

## COUNTY OF <u>ST. JOHNS</u>§

BEFORE ME, the undersigned authority, on this day personally appeared [x] by means of physical presence, Barry W. DeGroot, the Vice President of Marine Creek Ventures LLC known to me to be the person whose name is subscribed to the foregoing "Settlement Agreement and Release of all Claims" and acknowledged to me that he/she has executed same for the purposes and considerations therein expressed and in the capacity or capacities indicated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 8th day of December 2022.

Notary Public, the State of Florida

SANDRA LEE MUISE
Notary Public-State of Florida
Commission # HH 304384
My Commission Expires
August 23, 2026

DLP SETTLEMENT AGREEMENT

**Exhibit A**
**Receivership Entities**

**1. Receivership Entities**

a.    Wall007, LLC,

b.    Wall009, LLC,

c.    Wall010, LLC,

d.    Wall011, LLC,

e.    Wall012, LLC,

f.    Wall016, LLC,

g.    Wall017, LLC,

h.    Wall018, LLC,

i.    Wall019, LLC,

j.    Carnegie Development, LLC,

k.    DJD Land Partners, LLC,

l.    LDG001, LLC,

m.    BM318 LLC;

n.    D4DS LLC;

o.    D4FR LLC;

p.    D4KL LLC;

q.    Enoch Investments LLC;

r.    FHC Acquisition LLC;

s.    Goldmark Hospitality LLC;

t.    JMJ Acquisitions LLC;

u.    JMJ Development LLC;

v.    JMJAV LLC;

w.    JMR100 LLC;

x.    Lajolla Construction Management LLC;

y.    Mansions Apartment Homes at Marine Creek LLC;

z.    MO 2999TC, LLC;

aa.    Orchard Farms Village LLC;

bb.    Villita Towers LLC; and

cc.    126 Villita LLC

(collectively, "*Receivership Entities*").

**Exhibit B**

**Correction Affidavit**

**(Non-material correction pursuant to §5.028, Texas Property Code)**

Date:     _____
Affiant:  _____

Description of Original Instrument (include name of Instrument, date, parties and recording information):

> Special Warranty Deed from Orchard Farms Village, LLC, a Texas limited liability company to Orchard Farms Ventures LLC, a Florida limited liability company, dated December 31, 2021, recorded March 8, 2022 at under Clerk's File No. D222061225, of the Public Records of Tarrant County, Texas.

Affiant on oath swears that the following statements are true and within the personal knowledge of Affiant:

1. My name is _____. My address is _____. I am over the age of eighteen (18) years and am otherwise competent to make this Correction Affidavit.

2. I am the _____ [title/capacity] of _____[name of entity] which was the grantee named in that certain deed executed by _____ dated _____ and recorded under Clerk's File No. _____, Official Public Records, _____ County, Texas.

3. I am making this Affidavit as a correction instrument pursuant to §5.028 of the Texas Property Code, with regard to the following unintended error in the Original Instrument:

   legal description included two incorrect distance measurements in the metes and bounds description

4. The Original Instrument should be corrected with respect to the error described above, this being a non-material change to the Original Instrument:

   1) metes and bounds call of "N 10 14'41"W, a distance of 75.27 feet" is revised to "N 10 14'41"W, a distance of 73.53 feet"; and
   2) metes and bounds call of "S 10 14'41"E, a distance of 724.61 feet" is revised to "S 10 14'41"E, a distance of 722.87 feet".

   The corrected legal description is documented in the legal description attached to this Affidavit as Exhibit "A".

5. I have given notice of this correction of the Original Instrument by sending a copy of this Correction Affidavit by mail to each party to the Original Instrument in accordance with §5.028 (d) (2) of the Texas Property Code.

AFFIANT:

_____

STATE OF _____                    §

COUNTY OF _____                    §

      SWORN TO AND SUBSCRIBED before me on this _____ day of ____, 20__, by _____, to certify which witness my hand and seal of office.


My Commission Expires:

                         _____

                         Notary Public, State of ___

                         Notary Name Printed:

                         _____

**CORRECTION AFFIDAVIT AS TO A RECORDED ORIGINAL INSTRUMENT (Texas)**

<u>Exhibit A</u>
Legal Description of Land:
(Orchard Farms)

BEING a tract of land situated in Block 20 and Block 23 of the Shelby County School Land Survey, Abstract No. 1375, City of Fort Worth, Tarrant County, Texas, being a portion of that tract of land as described in deed to Wall 007, LLC, recorded in County Clerk's File No.D217259397, Official Public Records, Tarrant County, Texas (OPRTCT), and being more particularly described as follows:

BEGINNING at a mag nail with shiner stamped JPH LAND SURVEYING found in Rendon Road (R.O.W. varies) at the southeast corner of the final plat of Everman Junior High School #2 Addition, an addition to the City of Fort Worth, Tarrant County, Texas as recorded in County Clerk's File No. D209253723, OPRTCT and the most easterly northeast corner of said Wall 007 tract;

THENCE S 00 29'40" E, within said Rendon Road, along the east line of said Wall 007 tract, a distance of 866.90 feet to the southeast corner of the herein described tract of land, from which a 1/2" rebar capped found at the southeast corner of said Wall 007 tract bears S 00 29'40" E, 231.90 feet;

THENCE departing said Rendon Road, across said Wall 007 tract, as follows:

S 87 39'08" W, a distance of 54.11 feet to the beginning of a curve to the left, radial to said line;

Southeasterly, along said curve, having a radius of 1755.00 feet, a central angle of 01 37'57", an arc distance of 50.00 feet, and a chord that bears S 03 09'51" E, 50.00 feet to the end of said curve;

S 39 46'03" W, non-tangent to said curve, a distance of 21.58 feet;

S 83 4537" W, a distance of 110.25 feet to the beginning of a tangent curve to the left;

Southwesterly, along said curve, having a radius of 1205.00 feet, a central angle of 07 53'33", an arc distance of 165.99 feet, and a chord that bears S 79 48'50" W, 165.86 feet to the end of said curve;

S 75 52'03" W, tangent to said curve, a distance of 169.27 feet to the beginning of a tangent curve to the right;

Southwesterly, along said curve, having a radius of 1095.00 feet, a central angle of 13 33'42", an arc distance of 259.18 feet, and a chord that bears S 82 38'54" W, 258.58 feet to the end of said curve;

S 89 25'45" W, tangent to said curve, a distance of 286.15 feet; N

45 34'15" W, a distance of 14.14 feet;

N 00 34'15" W, a distance of 115.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

N 00 34'15" W, a distance of 50.00 feet;

N 45 34'15" W, a distance of 14.14 feet;

N 00 34'15" W, a distance of 215.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

N 00 34'15" W, a distance of 60.00 feet;

N 45 34'15" W, a distance of 14.14 feet;

N 00 34'15" W, a distance of 205.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

N 00 34'15" W, a distance of 50.00 feet;

N 45 34'15" W, a distance of 14.14 feet;

N 00 34'15" W, a distance of 200.00 feet;

N 44 25'45" E, a distance of 14.14 feet;

N 00 34'15" W, a distance of 50.00 feet;

N 45 34'15" W, a distance of 14.14 feet;

N 00 34'15" W, a distance of 118.00 feet;

S 89 25'45" W, a distance of 50.00 feet;

S 44 25'45" W, a distance of 14.14 feet;

S 89 25'45" W, a distance of 1015.66 feet;

N 50 24'28" W, a distance of 15.28 feet;

N 10 14'41" W, a distance of 73.53 feet;

S 79 45'19" W, a distance of 166.00 feet;

S 10 14'41" E, a distance of 722.87 feet;

S 39 35'32" W, a distance of 12.90 feet;

S 89 25'45" W, a distance of 81.44 feet;

N 50 24'28" W, a distance of 15.28 feet;

S 89 25'45" W, a distance of 50.72 feet;

S 39 35'32" W, a distance of 12.90 feet;

S 89 25'45" W, a distance of 83.47 feet;

N 50 24'28" W, a distance of 15.28 feet;

S 89 25'45" W, a distance of 16.23 feet;

S 39 35'32" W, a distance of 12.90 feet;

S 89 25'45" W, a distance of 83.47 feet;

N 50 24'28" W, a distance of 15.28 feet;

S 89 25'45" W, a distance of 50.72 feet;

S 39 35'32" W, a distance of 12.90 feet;

S 89 25'45" W, a distance of 49.46 feet to the beginning of tangent curve to left;

Southwesterly, having a radius of 525.00 feet, a central angle of 03 41'01", an arc distance of 33.75 feet, and a chord that bears S 87 35'14" W, 33.75 feet to the end of said curve;

N 52 31'21" W, non-tangent to said curve, a distance of 14.80

feet; S 83 46'44" W, a distance of 16.04 feet;

S 36 03'24" W, a distance of 13.82 feet to the beginning of a non-tangent curve to the left;

Southwesterly, along said curve, having a radius of 525.00 feet, a central angle of 02 03'25", an arc distance of 18.85 feet, and a chord that bears S 80 47'01" W, 18.85 feet to the end of said curve;

S 79 45'19" W, tangent to said curve, a distance of 63.17

feet; N 55 14'41" W, a distance of 14.14 feet;

S 79 45'19" W, a distance of 50.00 feet;

S 34 45'19" W, a distance of 14.14 feet;

S 79 45'19" W, a distance of 111.00 feet to a point in the west line of said Wall 007 tract and the east line of Tract II as described in deed to Crimson Ridge Land Partners LLC, recorded in County Clerk's File No. D214109111, OPRTCT, from which a 5/8" rebar capped JACOBS found at the southwest corner of said Wall 007 tract and an angle point in the east line of said Crimson Ridge Land Partners Tract II bears S 10 14'41" E, 489.49 feet;

THENCE N 10 14'41" W, along the west line of said Wall 007 tract and the east line of said Crimson Ridge Land Partners Tract II and Tract I as described in deed to Crimson Ridge Land Partners LLC, recorded in County Clerk's File No. D214109111, OPRTCT, a distance of 1945.20 feet to a 1/2" rebar found at the northeast corner of said Crimson Ridge Land Partners Tract I and the southeast

67624937;1

corner of a tract of land as described in deed to Lieven J. Van Riet, recorded in Volume 7229, Page 809, Deed Records, Tarrant County, Texas;

THENCE N 10 14'21" W, along the west line of said Wall 007 tract and the east line of said Riet tract, a distance of 189.63 feet (deeds 189.63 feet & 189.74 feet) to a 1/2" rebar found in the south line of Shelby Road (R.O.W. varies);

THENCE N 10 14'55" W, along the west line of said Wall 007 tract and within said Shelby Road, a distance of 30.53 feet to a 1" rebar found at the most westerly northwest corner of said Wall 007 tract;

THENCE within said Shelby Road, along the north line of said Wall 007 tract, as follows:

N 89 59'58" E, a distance of 101.56 feet to a 1" rebar found;

N 10 15'06" W, a distance of 28.88 feet to a point for corner;

N 89 28'44" E, a distance of 644.79 feet to a corner of said Wall 007 tract and the northwest corner of a tract of land as described in deed to Bean Electrical, Inc., recorded in County Clerk's File No. D21513149, OPRTCT;

THENCE S 00 38'25" E, departing said Shelby Road, along a reentrant line of said Wall 007 tract and the west line of said Bean Electrical tract, at a distance of 28.45 feet (deeds 28.45 & 28.38 feet) passing a 1" rebar found, continuing a total distance of 657.00 feet to a 1" steel pipe found at a reentrant corner of said Wall 007 tract and the southwest corner of said Bean Electrical tract;

THENCE N 89 3226" E, along a north line of said Wall 007 tract, the south line of said Bean Electrical tract, and the south line of a tract of land as described in deed to Michael E. Cleveland and Carolyn G. Cleveland, recorded in County Clerk's File No. D205045974, OPRTCT, a distance of 660.30 feet (deeds 660.30 feet 659.00 feet) to a 1" steel pipe found at a reentrant corner of said Wall 007 tract and the southeast corner of said Cleveland tract;

THENCE N 00 32'37" W, along a reentrant line of said Wall 007 tract and the east line of said Cleveland tract, at a distance of 641.1O feet passing a 1/2" rebar found continuing a total distance of 656.96 feet (deeds 656.96 feet & 657.00 feet) to a point for corner in said Shelby Road at a corner of said Wall 007 tract and the northeast corner of said Cleveland tract;

THENCE N 89 31'1O" E, within said Shelby Road, along the north line of said Wall 007 tract, a distance of 403.83 feet to a point for corner at the most northerly northeast corner of said Wall 007 tract and the northwest corner of said Everman Junior High School #2 Addition, from which a mag nail with shiner stamped JPH LAND SURVEYING found at the northeast corner of said Addition bears N 89 31 '10" E, 1571.46 feet (plat 1571.58 feet), and a 5/8" rebar capped JACOBS found bears S 00 51'10" E, 15.77 feet;

THENCE departing said Shelby Road, along the line common to said Wall 007 tract and said Everman Junior High School #2 Addition, as follows:

S 00 31'03" E, at a called distance of 80.40 feet passing the south line of said Shelby Road and the northwest corner of Lot 1, Block 1 of said Everman Junior High School #2 Addition, continuing a total distance of 260.76 feet (deed 260.76 feet, plat 260.90 feet) to a 1/2" rebar capped JPH LAND

67624937;1

SURVEYING found, from which a 5/8" rebar capped JACOBS found bears N 82 10' E, 0.25 feet;

S 45 30'57" E, a distance of 1809.96 feet (deed 1809.96 feet, plat 1810.00 feet) to a 1/2" rebar capped JPH LAND SURVEYING found, from which a 5/8" rebar capped JACOBS found bears N 67 50' E, 0.20 feet;

N 89 30'20" E, at a distance of 232.75 feet (deed 232.75 feet, plat 232.89 feet) passing a 1/2" rebar capped JPH LAND SURVEYING found at the southeast corner of said Lot 1, Block 1 and the west line of said Rendon Road, continuing a total distance of 291.04 feet (deed 291.04 feet, plat 291.06 feet) to the POINT OF BEGINNING and containing 4,365,714 square feet or 100.223 acres of land.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| *Plaintiff*, | § § § | |
| **v.** | § § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON,** **CARNEGIE DEVELOPMENT, LLC,** **WALL007, LLC,** **WALL009, LLC,** **WALL010, LLC,** **WALL011, LLC,** **WALL012, LLC,** **WALL016, LLC,** **WALL017, LLC,** **WALL018, LLC,** **WALL019, LLC,** **HAOQIANG FU (A/K/A MICHAEL FU),** **STEPHEN T. WALL,** | § § § § § § § § § § § § § § | |
| *Defendants*, | § § | |
| **DJD LAND PARTNERS, LLC, and** **LDG001, LLC,** | § § § | |
| *Relief Defendants*. | § | |

**[PROPOSED] ORDER**

Before the Court is the Receiver's Motion to Ratify Agreement with DLP Capital and Other DLP Entities and Brief in Support. Having considered the Motion, the Court finds that it should be and hereby is **GRANTED**. Accordingly, the Court hereby **RATIFIES** the Receiver's Agreement with DLP Real Estate Capital, Inc., DLP Winter Haven Ventures, LLC, Orchard Farms Ventures, LLC, and Marine Creek Ventures, LLC.

**SO ORDERED**

**DATED:** _____


_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 3:22-cv-2118-X |
| v. | § § § | |
| TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL009, LLC, WALL010, LLC, WALL011, LLC, WALL012, LLC, WALL016, LLC, WALL017, LLC, WALL018, LLC, WALL019, LLC, HAOQIANG FU (a/k/a MICHAEL FU), STEPHEN T. WALL, | § § § § § § § § § § § § § § | |
| *Defendants*, | § § § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC, | § § § | |
| *Relief Defendants*. | § | |

**ORDER GRANTING RECEIVER'S MOTION TO RATIFY AGREEMENT
WITH DLP CAPITAL AND OTHER DLP ENTITIES**

Before the Court is the Receiver's Motion to Ratify Agreement with DLP

Capital and Other DLP Entities.[1] [Doc. No. 95]. The Court notes that the Receiver

---

[1] The "DLP Entities" include DLP Real Estate Capital, Inc., DLP Winter Haven Ventures, LLC, Orchard Farms Ventures, LLC, and Marine Creek Ventures, LLC. Doc. No. 95 at 1.

1

was not obligated to obtain the Court's approval for this action,[2] but it agrees with
the Receiver that his proposed agreement with the DLP Entities, as described in the
instant motion,[3] is in the best interests of the Receivership. Accordingly, the Court
**GRANTS** the motion and **RATIFIES** the Receiver's agreement with the DLP
Entities.

     **IT IS SO ORDERED,** this 21st day of December, 2022.

<br>

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

    [2] *See* Doc. No. 29 (granting the Receiver the power to, "without further Order of th[e] Court,
transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the
ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the
Receivership Estate, and with due regard to the realization of the true and proper value of such
Receivership Property").

    [3] Doc. No. 95 at 10–30.