NO. 22-11242

# United States Court of Appeals for the Fifth Circuit

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*versus*

TIMOTHY BARTON,

*Defendant-Appellant*,

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

**BRIEF OF APPELLANT TIMOTHY BARTON**

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Parties**

   a. **Defendant-Appellant**: Timothy Barton

   b. **Plaintiff-Appellee**: Securities and Exchange Commission

   c. **Intervenors**:

      i. United States of America

      ii. Gillespie Villas LLC

      iii. Venus59 LLC

      iv. TRTX Properties LLC

      v. MXBA LLC

      vi. Titan Investments LLC

      vii. HNGH Turtle Creek, LLC

      viii. Southern Properties Capital, Ltd.

d. **Other Personal Defendants** (entity defendants included below)

   i. Haoqiang Fu *also known as* Michael Fu

   ii. Stephen T. Wall

**2. Attorneys**

a. **For Appellant**: Hunton Andrews Kurth LLP: Michael J. Edney, Ted Huffman, Sean O'Connell, Michael Dingman

b. **For Appellee**: Keefe M. Bernstein, James E. Etri, David B. Reece

c. **For Defendant Stephen T. Wall**: Johnson Vaughn & Heiskell: Michael P. Heiskell

d. **For Intervenor HNGH Turtle Creek**: Kirkland & Ellis LLP: Erin Angela Nealy Cox; Kane Russell Coleman & Logan PC: John Joseph Kane

e. **For Interested Party Maximilien Barton**: Norton Rose Fulbright US LLP: Nathan Benjamin Baum, Christopher Ryan Cooke

f. **For Intervenors Gillespie Villas LLC, Venus59 LLC, TRTX Properties LLC, MXBA LLC, and Titan**

**Investments LLC**: Norton Rose Fulbright US LLP: Nathan Benjamin Baum, Christopher Ryan Cooke

g. **For Interested Party David Dhiraj Ramolia**: Chandler & Shavin PLLC: Eliot Dana Shavin, Daniel Rasoul Alexander; Chandler Law PC: Corinna Pia Chandler

h. **For Interested Party Palisades-TC, LLC**: Tillotson Law: Jonathan Patton

i. **For Interested Party Circle H Contractors, LP**: Slates Harwell LLP: Aaron Thomas Capps

j. **For Interested Party MFO Venus Development, LLC**: Moss & Associates, LLC: Ian Edward Fullington

k. **For *Amicus Curiae* Cort Thomas**: Brown Fox PLLC: Charlene Cantrell Koonce, Tim Wells

l. **For Intervenor the United States of America**: Renee M. Hunter

m. **For Interested Party Tamamoi, LLC**: Spector & Cox PLLC: Howard Marc Spector

n. **For Interested Party 3820 Illinois, LLC**: Spector & Cox PLLC: Howard Marc Spector

o. **For Interested Party Vertical Street Ventures, LLC**: Winstead PC: Matthias Kleinsasser, Joseph J. Wielebinski

p. **For Interested Party Southern Star Capital, LLC d/b/a Reliance Mortgage Company**: Law Office of Robert W Buchholz PC: Robert W. Buchholz

q. **For Intervenor Southern Properties Capital, Ltd**.: Shamoun & Norman LLP: C. Gregory Shamoun, Brian Keith Norman

**3. Other**

**a. 159 Other Entities Seized**

| | | |
|---|---|---|
| Carnegie Development, LLC (Defendant) | WALL007, LLC (Defendant) | WALL009, LLC (Defendant) |
| WALL010, LLC (Defendant) | WALL011, LLC (Defendant) | WALL012, LLC (Defendant) |
| WALL016, LLC (Defendant) | WALL017, LLC (Defendant) | WALL018, LLC (Defendant) |

| | | |
|---|---|---|
| WALL019, LLC (Defendant) | DJD Land Partners, LLC (Relief Defendant) | LDG001, LLC (Relief Defendant) |
| BM318 LLC | D4DS LLC | D4FR LLC |
| D4KL LLC | Enoch Investments LLC | FHC Acquisition LLC |
| Goldmark Hospitality LLC | JMJ Acquisitions LLC | JMJ Development LLC |
| JMJAV LLC | JMR100 LLC | Lajolla Construction Management LLC |
| Mansions Apartment Homes at Marine Creek LLC | MO 2999TC, LLC | Orchard Farms Village LLC |
| Villita Towers LLC | 126 Villita LLC | AVEG WW, LLC |
| AVG West, LLC fka JMJ Acquisitions, LLC | Barton Texas Water District, LLC | Barton Water District, LLC |
| BC Acquisitions, LLC | BEE2019, LLC | Broadview Holdings, LLC |

| | | |
|---|---|---|
| Broadview Holdings Trust | BSJ Trading, LLC | BUILD VIOLET, LLC |
| Carnegie Development, Inc. | D4AT, LLC | D4AVEG, LLC |
| D4BM, LLC | D4BR, LLC | D4IN, LLC |
| D4MC, LLC | D4OP, LLC | D4OPM, LLC |
| D4SMC, LLC | D4WP, LLC | Dallas Real Estate Investors, LLC |
| Dallas Real Estate Lenders, LLC | Dallas Real Estate Management, LLC | Five Star GM, LLC |
| Five Star MM, LLC | FIVE STAR MM, LLC | Five Star TC, LLC |
| Glenwood (18340) Property, LLC | HR Sterling, LLC | Illuminate Dallas, LLC |
| JB Special Asset, LLC | JMJ Acquisitions Mgmt, LLC | JMJ Aviation, LLC |
| JMJ BLUES TX, LLC | JMJ Centre, LLC | JMJ Development Brasil, LTDA |
| JMJ Development, Inc | JMJ Development Fund | JMJ Development Fund, Inc |

| | | |
|---|---|---|
| JMJ EB5 Fund, LP | JMJ EB5 Fund GP, LLC | JMJ Holdings, LLC |
| JMJ Holdings US LLC | JMJ Holdings USA, Inc. | JMJ Home Building Inc. |
| JMJ Hospitality, LLC | JMJ Hospitality General Trading FZE | JMJ Hospitality UAE |
| JMJ Investments Limited | JMJ Land Acquisition, Inc | JMJ Land Development, Inc |
| JMJ Land Venture, LLC | JMJ MF Development, LLC | JMJ Mezzanine, Inc |
| JMJ Multifamily, Inc | JMJ Offshore, LTD | JMJ Regional Center, LLC |
| JMJ Residential, LLC | JMJ Valley Center, LLC | JMJ VC Management, LLC |
| JMJ148, LLC | JMJAV, LLC | JMJD4, LLC |
| JMJD4Allensville LLC | JMJDWG, LLC | JMJKH, LLC |
| LC Aledo TX, LLC | Lynco Ventures, LLC | Lynn Investments, LLC |

| | | |
|---|---|---|
| Lynco Ventures, LLC | Mansion Apartment Homes at Marine Creek, LLC | MCFW, LLC |
| MCRS2019, LLC | Middlebury Trust | MMCYN, LLC |
| MXBA Managed, LLC | MXBA Services, LLC | Myra Park 635, LLC |
| Northstar 114, LLC | Northstar PM, LLC | One Agent, LLC |
| One Agent Texas, LLC | ONE FHC, LLC | One MFD4, LLC |
| One Pass Investments, LLC | One RL Trust | ONE SF Residential, LLC |
| Residential MF Assets, LLC | Ridgeview Addition, LLC | Riverwalk Invesco, LLC |
| Riverwalk Opportunity Management, LLC | Riverwalk OZFM, LLC | Riverwalk OZFV, LLV |
| Riverwalk QOZBJ, LLC | Riverwalk QOZBM, LLC | Riverwalk QOZBV, LLC |
| Seagoville Farms, LLC | SF Rock Creek, LLC | SK Carnegie, LLC |

| | | |
|---|---|---|
| STL Park, LLC | The MXBA Trust | The Timothy L. Barton Irrevocable Life Insurance Trust |
| TLB 2018 Trust | TLB 2019 Trust | TLB 2020 Trust |
| TRWF, LLC | TRWF LODGE, LLC | VenusBK195, LLC |
| VenusPark201, LLC | WRL2019, LLC | 126 Villita Towers, LLC |
| 2999 Acquisitions, LLC | 2999 Middlebury, LLC | 2999 Roxbury, LLC |
| 2999TC Acquisitions, LLC fka 2999TC, LLC | 2999TC Acquisitions MZ, LLC fka MO 2999TC MZ, LLC | 2999TC Founders, LLC |
| 2999TC JMJ, LLC | 2999TC JMJ, LLC | 2999TC JMJ CMGR, LLC |
| 2999TC JMJ Equity, LLC | 2999TC LP, LLC | 2999TC JMJ MGR, LLC |
| 2999TC MZ, LLC | 2999TC MM, LLC | TC Hall, LLC |
| Titan 2022 Investment, LLC | Marine Creek SP, LLC | Aledo TX, LLC |

**b. Interested Parties**

i. Bank of America, N.A. (Respondent)

ii. Maximilien Barton

iii. Circle H Contractors, LP

iv. MFO Venus Development, LLC

v. Palisades-TC, LLC

vi. Southern Star Capital LLC d/b/a Reliance Mortgage Company

vii. Tamamoi, LLC

viii. David Dhiraj Ramolia

ix. 3820 Illinois, LLC

x. Vertical Street Ventures, LLC

**c. Amicus Curiae**

i. Cort Thomas

*/s/ Michael J. Edney*
Counsel for Timothy Barton

## Statement Regarding Oral Argument

Appellant Timothy Barton respectfully requests oral argument. At issue in this appeal is the district court's order approving the sale of significant interests in real property without following the prescribed statutory procedure for doing so. This case presents factual, procedural, and legal nuances such that the ability to question counsel in person may aid the Court in resolving the issues presented.

# Table of Contents

Certificate of Interested Persons .......... ii

Statement Regarding Oral Argument .......... xii

Table of Contents .......... xiii

Table of Authorities .......... xiv

Jurisdictional Statement .......... 1

Statement of the Issues .......... 5

I. Introduction .......... 6

II. Statement of the Case .......... 8

III. Summary of the Argument .......... 17

IV. Argument .......... 20

A. 28 U.S.C. § 2001 governs the sale of real property and interests therein. .......... 21

B. The Receiver's sale in violation of the statute is contrary to the best interests of the receivership estate. .......... 26

C. The District Court's Errors in Appointing and Empowering the Receiver Require Reversal of the DLP Sale Order. .......... 32

V. Conclusion .......... 34

Certificate of Filing and Service .......... 36

Certificate of Compliance .......... 37

# Table of Authorities

**Cases** **Page(s)**

*Acadia Land Co. v. Horuff*,
110 F.2d 354 (5th Cir. 1940) .......... 3, 26, 32

*In re Am. Colonial Broad. Corp.*,
758 F.2d 794 (1st Cir. 1985) .......... 2

*Anadarko E & P Co., LP v. Clear Lake Pines, Inc.*,
No. 03-04-00600-CV, 2005 WL 1583506 (Tex. App.-Austin July 7, 2005) .......... 22, 23

*In re Applied Chem. Magnesias Corp.*,
206 S.W.3d 114 (Tex. 2006) .......... 21

*In re Brin & Brin, P.C.*,
No. 13-13-00324-CV, 2013 WL 3895365 (Tex. App.-Corpus Christi-Edinburg July 23, 2013) .......... 22

*Butner v. United States*,
440 U.S. 48 (1979) .......... 21

*Citibank, N. A. v. Data Lease Fin. Corp.*,
645 F.2d 333 (5th Cir. 1981) .......... 1

*In re City Nat'l Bank*,
257 S.W.3d 452 (Tex. App.-Tyler 2008) .......... 22

*City of Beaumont v. Moore*,
146 Tex. 46 (1947) .......... 22

*Clyde v. Hamilton*,
414 S.W.2d 434 (Tex.1967) .......... 23

*Contimortgage Corp. v. Anglezis*,
173 F. App'x 458 (7th Cir. 2006) .......... 1

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) .......... 20

*Dietrich v. Heintz*,
99 S.W. 417 (Tex. App. 1907) ........................................................ 23, 24

*Eberhard v. Marcu*,
530 F.3d 122 (2d Cir. 2008) ............................................................... 28

*First Nat'l Bank of Cleveland v. Shedd*,
121 U.S. 74 (1887) ................................................................................ 1

*Indep. Tube Corp. v. Levine*,
80 B.R. 659 (D. Vt. 1987) .................................................................... 21

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) ........................................................... 14, 33

*Kelley v. Marlin*,
714 S.W.2d 303 (Tex. 1986) ............................................................... 24

*Koon v. United States*,
518 U.S. 81 (1996) ........................................................................ 20, 34

*Latham v. Miller*,
250 S.W.2d 302 (Tex. Civ. App. -Austin 1952) .................................. 22

*Los Angeles Tr. Deed & Mortg. Exch. v. SEC*,
285 F.2d 162 (9th Cir. 1960) ................................................................ 2

*Nationwide of Bryan, Inc. v. Dyer*,
969 S.W.2d 518 (Tex. App.-Austin 1998) ............................................ 21

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) ........................................................... 20, 32

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
24 F.4th 442 (5th Cir. 2022) ................................................................ 2

*Quigley v. Bennett*,
227 S.W.3d 51 (Tex. 2007) ................................................................. 22

*Sage v. Cent. R. Co.*,
96 U.S. 712 (1877) ................................................................................ 1

*SEC v. ABS Manager, LLC*,
No. 13CV319-GPC JMA, 2013 WL 1164413 (S.D. Cal. Mar. 20, 2013) ........ 31

*SEC v. Am. Bd. of Trade, Inc.*,
830 F.2d 431 (2d Cir. 1987) ........ 28

*SEC v. Barton*,
Case No. 22-11132 (5th Cir. 2022) ........ 6, 8, 14

*SEC v. Current Fin. Servs., Inc.*,
783 F. Supp. 1441 (D.D.C. 1992) ........ 28

*SEC v. Forex Asset Mgmt. LLC*,
242 F.3d 325 (5th Cir. 2001) ........ 2, 4

*SEC v. Stanford Int'l Bank, Ltd.*,
927 F.3d 830 (5th Cir. 2019) ........ 20

*SEC v. T-Bar Res., LLC*,
No. CIV.A.3:07CV1994-B, 2008 WL 4790987 (N.D. Tex. Oct. 28, 2008) ........ 26

*T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*,
651 S.W.2d 284 (Tex. App.-Austin 1983) ........ 22

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ........ 20

*Yzaguirre v. KCS Res., Inc.*,
53 S.W.3d 368 (Tex. 2001) ........ 23

**Statutes**

15 U.S.C. § 77t(b) ........ 1

15 U.S.C. § 77t(d) ........ 1

15 U.S.C. § 77v(a) ........ 1

15 U.S.C. § 78u(d) ........ 1

15 U.S.C. § 78u(e) .......... 1

15 U.S.C. § 78aa.......... 1

28 U.S.C. § 1291.......... 1, 2, 4

28 U.S.C. § 2001.......... *passim*

28 U.S.C. § 3103(b)(1)(B).......... 33

**Other Authorities**

Black's Law Dictionary (6th ed. 1990).......... 21

Federal Rule of Appellate Procedure 4(a)(1)(B) .......... 4

## Jurisdictional Statement

The district court has subject matter jurisdiction over this case under 15 U.S.C. §§ 77t(b), 77t(d), 77v(a), 78u(d), 78u(e), and 78aa, which provide jurisdiction to adjudicate alleged violations of various securities laws. The Securities and Exchange Commission alleges violations of those laws in this matter. **ROA.27–28**. This Court has two independent bases for jurisdiction: the longstanding rule that a judicial order confirming the sale of property is an appealable final order and the collateral order doctrine.

*First,* this Court has jurisdiction under 28 U.S.C. § 1291 because the district court's order was, in effect, an "order confirming a judicial sale of property," which "is a final order." *Citibank, N. A. v. Data Lease Fin. Corp.*, 645 F.2d 333, 337 (5th Cir. 1981); *see Contimortgage Corp. v. Anglezis*, 173 F. App'x 458, 462 (7th Cir. 2006) ("[A]n order confirming sale is final and appealable."). That principle has been black-letter law for 150 years. *See Sage v. Cent. R. Co.*, 96 U.S. 712, 714 (1877) ("[A] decree confirming a sale, if it is final, may be appealed from."); *First Nat'l Bank of Cleveland v. Shedd*, 121 U.S. 74, 85 (1887) (rejecting argument that a property-sale order in receivership proceeding was merely "an

interlocutory decree or order of sale, and not a final decree"); *see also In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801–03 (1st Cir. 1985) (rejecting appeal of order authorizing sale negotiations while noting that parties can appeal from order confirming a sale); *Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 165 (9th Cir. 1960) (citing 28 U.S.C. § 1291 as the basis for jurisdiction over, *inter alia*, a receivership liquidation order).

*Second*, and in the alternative, the district court's order "fits within the confines of the collateral order doctrine." *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 330 (5th Cir. 2001). The collateral order doctrine provides appellate jurisdiction when an order "[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment." *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 448 (5th Cir. 2022) (quotation and original alterations omitted). The district court's order approving the so-called "settlement agreement" that relinquished the property rights at issue meets these requirements.

First, the district court's order conclusively resolves a disputed question: whether the receiver could enter an agreement to dispose of certain property rights of the receivership estate. **ROA.2787–88**.

Next, the question of whether the district court should have approved that agreement is important. As explained in more detail below, the receiver relinquished participation, development, and construction management agreements, and related interests, worth more than $20 million. **ROA.2783.** But the receiver disposed of them all for a mere $750,000, and did so without complying with the statutory requirements of 28 U.S.C. § 2001 that would have prevented that sale from ever occurring. *See* 28 U.S.C. § 2001(b) (prohibiting sale that is below "two-thirds of the appraised value."); *see Acadia Land Co. v. Horuff*, 110 F.2d 354, 354 (5th Cir. 1940) (holding that a sale is void if statutory requirements are not satisfied). That unjustified disposition of property must have a legal mechanism to be remedied on appeal. Otherwise, Appellant and all future similarly-situated parties would be deprived of a means to vindicate their rights, and it would mean that 28 U.S.C. § 2001 is rendered effectively meaningless and unenforceable. And while the district court's sale order is notably separate from the issue

of whether the Appellant is liable for the underlying allegations of securities fraud, the issues with that order are important because the order purports to irreversibly dispose of the Appellant's property rights and interests before he has an opportunity to defend the allegations against him. *Forex Asset Mgmt.*, 242 F.3d at 330 (holding that "distribution of assets" from receivership in SEC action is an important issue that "is separate from the merits of the SEC's complaint").

Finally, the district court's order will be effectively unreviewable on appeal because these interests will be relinquished and difficult to recover "long before the action brought by the SEC is subject to appellate review." *Forex Asset Mgmt.*, 242 F.3d at 330. Thus, even if this Court concludes that the district court's order is not appealable under 28 U.S.C. § 1291, it is appealable under the collateral order doctrine.

The district court issued the appealed order on December 21, 2022. **ROA.2788**. The Appellant noticed this appeal on December 23, 2022, **ROA.2952–53**, within the 60-day period allotted by Federal Rule of Appellate Procedure 4(a)(1)(B). This appeal is therefore timely.

## Statement of the Issues

1. Did the receiver's so-called "settlement agreement" relinquish "realty," "interest[s]" in realty, "or any part thereof" such that the sale of those interests is subject to 28 U.S.C. § 2001(b) and the district court erred in failing to apply that statute?
2. Did the district court err when it held that releasing more than $20 million in property-related rights for $750,000 or four percent of their value, was in the best interests of the estate?

# I. <u>Introduction</u>

This case concerns the District Court's supervision of the actions of a court-appointed receiver (the "Receiver"). After the Securities and Exchange Commission ("SEC" or the "Commission") filed a complaint accusing the Appellant of violations of the Securities Exchange Act in the handling of certain loans to certain of the Appellant's real estate development businesses, the District Court appointed a trial lawyer with whom he was acquainted as Receiver. In doing so, the District Court seized any corporation in any way associated with the Appellant, whether or not it was involved in the lending transactions the Commission claimed to be illegal. The District Court did so solely based on allegations of the Appellant's wrongdoing, before the SEC had submitted any evidence supporting those allegations. And the District Court bypassed the Commission's recommended choice for Receiver—an experienced Dallas real estate professional who could have competently run the seized businesses—for his trial-lawyer receiver who has embarked on a liquidation spree. Those decisions are under appeal, which this Court is hearing on an expedited basis on May 1, 2023. *SEC v. Barton*, Case No. 22-11132 (5th Cir. 2022).

The District Court is not closely supervising the Receiver's work, even when required by law to do so. The order currently under appeal is among the most glaring examples. Through the order, the District Court approved the sale of property rights—scheduled to pay one of the Appellant's corporate entities seized by the Court more than $20 million—for $750,000 or 4 percent of its value. That was error.

First, federal law requires that, before approving a receiver's sale of "realty or interest [therein] or any part thereof," a district court must ensure that the sale satisfies several procedural requirements. 28 U.S.C. § 2001(b). But the District Court in this case ignored that statute. Instead, it permitted the Receiver in this action to sell certain rights and interests in real property, held by entities in the receivership estate, for pennies on the dollar. These rights were created under Texas law, which makes plain that they are interests in realty. Accordingly, Section 2001 clearly applies, the District Court's failure to follow Section 2001 procedures was error, and this Court should reverse. In addition, the Court abused its discretion in holding that the sale of these property rights was in the best interests of the estate. The Court permitted the Receiver to give away more than $20 million in property-related rights,

which were key compensation for development work performed by a company the Court improperly seized and gave to the Receiver. The Receiver said that the Receivership needed cash now, but the District Court engaged in no serious inquiry of whether that was really true, including what other more reasonable sales might be in the pipeline. It is hard to imagine any cash crisis that would justify frittering away $20 million in future payments for a $750,000 now, and none was shown on the record. Finally, the District Court abused its discretion by appointing a Receiver unwilling or unable to carry out the underlying development work to obtain that over $20 million, which in itself is an abuse of discretion.

## II. Statement of the Case

Appellant Timothy Barton was Chief Executive Officer of JMJ Development LLC, a real estate development business, until the District Court displaced him with its receivership order currently under appeal in *SEC v. Barton*, Case No. 22-11132 (5th Cir. 2022). In that capacity, he, through various business entities, acquired three properties, one in Florida and two in Texas. **ROA.2679**. In late 2021, these entities sold those properties to entities affiliated with DLP Real Estate Capital, Inc.

("DLP"). At issue here are the transactions in which the Barton entities sold the two Texas properties. Therein, the Barton entity Orchard Farms Village LLC conveyed its interests in a development property, known as Orchard Farms, to Orchard Farms Ventures, a DLP entity. **ROA.2679**. Likewise, Mansions Apartment Homes At Marine Creek, LLC, a Barton entity, conveyed its interest in another development property, known as Marine Creek, to Marine Creek Ventures, a DLP entity. **ROA.2679**. In addition to scheduled cash payments, these deals involved the DLP entities assigning development, participation, and construction management rights in those properties to various Barton entities. **ROA.2677–80**. Specifically, the DLP entities assigned a development interest in the Orchard Farms property to Orchard Farms Developments, LLC, a participation interest in the Orchard Farms property to Orchard Farms Village, LLC, a development interest in the Marine Creek property to Marine Creek Developments, LLC, a construction management interest in the Marine Creek property to La Jolla Construction Management, LLC, and a participation interest in the Marine Creek to Marine Creek SP LLC, all Barton entities. **ROA.2679–80**.

DLP's assignment of these rights arose contemporaneously with the transfer of fee simple title in the real estate. The participation agreements granted Marine Creek Developments, LLC, interests in the realty in the amount "of 25% of the increased value to the [Marine Creek] project." **ROA.2783**.[1] "[T]he Orchard Farms project had similar terms . . . and was contemplated to result in similar asset value and returns." **ROA.2783**. All of these fees were keyed to the ultimate value of the developed real estate asset at completion of development or sale. The development and construction management interests were granted to the other Barton entities for 2.5% and 3% of "total development costs," respectively. **ROA.2783**.

According to memoranda of agreement filed in the public records of Tarrant County, Texas, with respect to the participation agreements, the DLP entities expressly conveyed these interests "[i]n further consideration" of "the sale of the Land and assignment of associated

[1] Although the record only provides this level of detail on the Marine Creek development, "the Orchard Farms project had similar terms as the Marine Creek property . . . [and] was contemplated to result in similar asset value and returns," **ROA.2783**, as evidenced by the near-identical terms of the participation agreements recorded in the Tarrant County records. **ROA.2761–2781**.

development rights" from the Barton entities to the DLP entities. **ROA.2781**; **ROA.2772**.

Moreover, these interests were tied to the land. The publicly-filed memorandum agreements expressly recited covenanting for the participation interests "*[i]n further consideration*" of "the sale of the Land and assignment of associated development rights" from the Barton entities to the DLP entities. **ROA.2781** (emphasis added); **ROA.2772** (same). The "covenants, conditions, restrictions, easements and agreements" set forth in these documents were defined to "run[] with the land throughout the term of the Participation Agreement[s]." **ROA.2763**; **ROA.2774**. Moreover, the parties agreed that the agreements would bind their "heirs, successors, assigns, executors and administrators." **ROA.2763**; **ROA.2774**.

The participation agreements granted substantial interests in the land to Barton's entities. Just one of these participation agreements holds a value of "approximately $20-23 million from the development of" the property, while "[t]he development and construction management

agreements would lead to millions more in compensation." **ROA.2783**.[2] The other agreements "had similar terms" and were "contemplated to result in similar asset value and returns." **ROA.2783**. The Barton entities' interests is tied up in the realty itself and will not be subject to payment until a final sale of the property.

In late 2022, the District Court seized the Barton entities—including all their assets and interests in the Marine Creek and Orchard Farms properties—in connection with a civil securities proceeding filed by the SEC. On September 23, 2022, the SEC filed the instant case alleging that nine different entities formed by and named after another Dallas real estate developer, Stephen Wall (the "Wall Entities"), improperly obtained loans from Chinese nationals in connection with several real estate development projects. **ROA.29–43**. Three days later,

---

[2] The Appellant presented evidence to the district court that "[t]he business documents describing the project scope and valuations are at . . . offices seized by the Receiver," and that "[i]f those documents were produced," it is likely that they "would provide further documentary support for the" Appellant's valuation of the agreements. **ROA.2784**. Notably, the District Court severely expedited briefing on this motion, such that no time was permitted for any discovery. **ROA.17** (reflecting electronic order requiring response to the Receiver's motion by "close of business" on December 20, 2022, five days after the Receiver filed his motion).

the SEC filed an Expedited Motion for Appointment of Receiver seeking to impose a receivership over any entity that Barton "directly or indirectly control[led]," regardless of whether any particular entity received any of the loan proceeds of which the SEC is complaining. **ROA.119–145**. On October 18, 2022, the District Court granted the SEC's motion, with no explanation or justification other than adopting the SEC's proposed order directed at empowering the Receiver nearly verbatim. **ROA.594; ROA.606–07**. The District Court's only change was to skip over the Commission's recommended candidate for receiver, a real estate professional who could have easily understood and handled Orchard Farms and Marine Creek assets, for a trial lawyer that the District Court preferred. **ROA.143** (SEC motion requesting David Wallace as receiver); **ROA.607** (District Court order appointing Cortney Thomas as receiver). Ultimately, the District Court seized 164 corporate entities, including entities controlled by the Appellant's son, although the vast majority of these entities are not named as defendants or relief defendants in the lawsuit. **ROA.2610–14.**

The Appellant has repeatedly moved the District Court to excise entities from the receivership estate that have nothing to do with the

SEC's claims. *See, e.g.*, **ROA.1095**. But the District Court has repeatedly denied the Appellant's requests, often with no explanation as to why. **ROA.1183–88**.

On November 17, 2022, the Appellant filed a notice of appeal of the District Court's orders appointing the Receiver over his companies. **ROA.1190**. In that appeal, the Appellant argues that, *inter alia*, the SEC did not establish a basis to impose a receivership over the vast majority of entities that are now in receivership. Most directly, the Appellant raises the SEC's failure to follow this Court's precedent in *Janvey v. Adams*, which prohibits the imposition of receivership over any non-defendant entity unless the movant "establish[es]" that the entity "(1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds." 588 F.3d 831, 834 (5th Cir. 2009). That appeal is fully briefed and is scheduled for expedited oral argument on May 1, 2023. *SEC v. Barton*, Case No. 22-11132 (5th Cir. 2022) [Docket No. 77].

While that appeal has been pending, the Receiver has rushed to permanently sell tens of millions of dollars of property owned by many of the entities which the Appellant has directly challenged under precedential law as being improperly added to the receivership. That

includes the Receiver's efforts to dispose of valuable realty interests belonging to the five entities with interests in Marine Creek and Orchard Farms at issue in the present appeal.

On December 15, 2022, the Receiver moved to ratify a so-called "settlement agreement" with the DLP entities, by which the Receiver would relinquish the property interests held by the receivership estate in Marine Creek and Orchard Farms for a cash payment of $750,000. **ROA.2677.** The next day, the District Court dramatically expedited the briefing schedule, requiring a response in five days rather than the 21 days ordinarily provided. **ROA.17**. The Appellant objected to the proposed transaction as the Receiver provided scant documentation to support his assertions, the transaction would upend the status quo, and the transaction concerned the sale "realty or [an] interest therein" such that any sale must proceed under the auspices of 28 U.S.C. § 2001. **ROA.2749–56**. In the face of the Appellant's objection, the Receiver's principal justification for this fire sale was an alleged acute need for cash to run the corporations under Receivership. On December 21, 2022, the District Court granted the Receiver's motion without engaging with those objections, merely "not[ing] that the Receiver was not obligated to obtain

the Court's approval" and that the transaction "is in the best interests of the Receivership." **ROA.2787–88**. Within hours of the District Court's ruling, the Receiver filed a motion to approve another sale of piece of property that the Appellant had arranged before his removal from management by the District Court. The Receiver thus knew that the Appellant would not have opposed the transaction, that it would raise millions of dollars in operating cash, and that it would have undermined any claim of a cash flow crisis. **ROA.2789**. Weeks later, the Receiver petitioned the Court to pay himself and his law firm partners $349,868.70 from the proceeds of this DLP sale, a request the District Court promptly approved. **ROA.3455**; ECF No. 195 (order granting fee application).

The Appellant filed this appeal on December 23, 2022. **ROA.2952**. That same week, the Appellant separately moved to stay the District Court's DLP order. **ROA.2957**. That motion remains pending in the District Court.

While the Appellant had previously appealed the District Court's initial orders appointing a receivership over non-defendant entities, this separate appeal of the District Court's DLP sale order is needed to void the DLP transaction that was consummated in violation of the statute.

## III. Summary of the Argument

The District Court erred when it approved the sale of more than $20 million in property rights for just a few hundred thousand dollars in cash today. First, that sale never would have survived the procedures Congress required through 28 U.S.C. § 2001 for the sale of a realty interest, which the District Court bypassed. Those procedures must precede court approval of the sale of a realty interest, not just sale of the actual real estate itself. 28 U.S.C. § 2001 (requiring these procedures for private sales of "realty or interest or any part thereof"). And, under Texas law, the participation, development, and construction management interests that the Receiver purported to sell are realty interests. But the Receiver did not follow the requirements of Section 2001, the District Court did not enforce them, and, worse still, the District Court held that the Receiver need not seek court approval of the sale in the first place. **ROA.2787–2788**. The court provided no written explanation for that holding, nor did it engage with the Appellant's arguments that the Receiver was selling interests in realty.

Next, the District Court erred by holding this transaction is in the best interests of the receivership estate. That much is evident from the

fact that the Receiver could not have satisfied 28 U.S.C. § 2001 with his showing. Section 2001 prohibits any private sale "at a price less than two-thirds of the appraised value" of the property. 28 U.S.C. § 2001(b). Even the participation interest in the Marine Creek property alone will, when it accrues, net "approximately $20-23 million." **ROA.2783**. The Receiver's asking price for *all* of the Barton entities' interests was $750,000. **ROA.2681**. That sum would not pass muster under Section 2001 for a sale of the participation agreement in Marine Creek alone, as it amounts to less than 4 percent of that agreement's value, far less than the two-thirds floor that Congress set. And the District Court's approval of it was an abrogation of its responsibilities to supervise the actions of the Receiver.

As an initial matter, this fire sale is completely divorced from the purposes of a receivership that is imposed before any evidence that the Appellant is liable is adduced, much less before a judgment for that liability is entered. Instead, a pre-judgment receivership is supposed to maintain the status quo and keep assets safe for return to the Appellant (in the event the SEC does not prove its case) or for the compensation of alleged victims (if the SEC eventually does secure a judgment). Here, the

Receiver is seeking permanently to destroy a $20 million asset, before the SEC has produced a single document in discovery, before a trial, or before a judgment. All to generate $750,000, the bulk of which is destined for the professional fees of the Receiver and his litigation law firm colleagues.

Next, the Receiver's claimed reason for approving this sale—to resolve some alleged acute cash flow crisis—rings hollow when considered against the backdrop of this case. The receivership estate contains a substantial number of valuable real estate assets, several of which are ripe for sale. Even the sales that the District Court has already approved will generate millions of dollars in liquidity, dwarfing the $750,000 at issue here and underscoring any claim of necessity to be untrue. One prime example is a real estate sale that the Receiver knew would not be opposed, for which it sought permission hours after the District Court's rush approval of the DLP sale. Any conclusion that it is in the best interests of the receivership estate to sacrifice more than $20 million in contracted-for realty interests for a paltry $750,000, all under the guise of an illusory need for cash, is unreasonable and an abuse of discretion. Moreover, the District Court's appointment of a receiver unfit

to handle the underlying transactions, rather than the experienced real estate manager the SEC proposed at the outset, is a direct cause of the errors at issue here and is in itself an abuse of discretion.

Because the District Court's errors permit a sale that never should have occurred, that is contrary to statute, and that is contrary to the best interests of the receivership estate, this Court should reverse the District Court's order permitting the sale and declare it void.

## IV. Argument

This Court reviews a District Court's orders ratifying the actions of a receiver for abuse of discretion. *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 839 (5th Cir. 2019); *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012). "[A] court's exercise of its discretion is not unbounded; that is, a court must exercise its discretion within the bounds set by relevant statutes and relevant, binding precedents." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008). Further, "[a] district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996); *Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022). Because the District Court failed to apply 28 U.S.C. § 2001 to a sale of interests in realty, approved a sale that was

not in the best interests of the receivership estate, and erroneously appointed a receiver who is not qualified to manage the underlying businesses, it abused its discretion. This Court should reverse.

### A. 28 U.S.C. § 2001 governs the sale of real property and interests therein.

28 U.S.C. § 2001 sets forth its scope in plain language. It applies to any court-ordered sale of any real property, "interest therein," or "part thereof." 28 U.S.C. § 2001(a)–(b). "The nature of the property interest must be determined by an examination of State law." *Indep. Tube Corp. v. Levine*, 80 B.R. 659, 661 (D. Vt. 1987) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)). Here, that means Texas law.

While real estate is a narrow term, an "interest" in realty includes a broader bundle of rights. *See In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 118 (Tex. 2006). An interest in realty is not limited to fee simple ownership of land. It also includes any encumbrance on the property or its title that "diminishes the value of the [property] and constitutes a burden on its transfer." *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 521 (Tex. App.-Austin 1998) (citing Black's Law Dictionary 527 (6th ed. 1990)). Texas courts have long recognized encumbrances to include interests such as liens, easements, leases,

servitudes, claims, and other charges upon the estate. *See City of Beaumont v. Moore*, 146 Tex. 46, 54-55 (1947); *Latham v. Miller*, 250 S.W.2d 302, 304 (Tex. Civ. App. -Austin 1952); *see also Anadarko E & P Co., LP v. Clear Lake Pines, Inc.*, No. 03-04-00600-CV, 2005 WL 1583506, at *3 (Tex. App.-Austin July 7, 2005) ("Examples of encumbrances include liens, claims, easements, and servitudes."); *In re City Nat'l Bank*, 257 S.W.3d 452, 455 (Tex. App.-Tyler 2008) ("[A]ny deed, contract, judgment, or other instrument . . . that purports to convey any interest in or makes any charge upon the land of a true owner . . . is a cloud upon the legal title of the owner.").

Monetary interests in the value or proceeds of the land, without any right to use the land, also constitute interests in the realty. *See Quigley v. Bennett*, 227 S.W.3d 51, 54 (Tex. 2007) (holding that an "overriding royalty interest" is an "interest in real estate"); *T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 292 (Tex. App.-Austin 1983) (holding that contracts conveying "an overriding royalty or a net profits interest" convey "an interest in land" even though such interests do not encompass "the underlying leases or any oil and gas in place, or a fractional part thereof"); *see also In re Brin & Brin, P.C.*, No. 13-13-00324-CV, 2013 WL

3895365, at *7 (Tex. App.-Corpus Christi-Edinburg July 23, 2013) (holding that a "nonparticipating royalty interest" is a real property interest). Those interests exist in the realty itself as long as the payment rights have not accrued. *See, e.g., Anadarko*, 2005 WL 1583506, at *3 (citing *Clyde v. Hamilton,* 414 S.W.2d 434 (Tex.1967)) ("Under Texas law, unaccrued royalties on oil and gas are interests in realty."). It is only when a monetary interest in the land has fully accrued such that it is presently owed and payable that such interest transforms from one in realty to one in personalty. *See Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 370 (Tex. 2001).!

The same principles apply when an interest in real property may be realized from the ultimate sale of that property. *See, e.g., Dietrich v. Heintz*, 99 S.W. 417 (Tex. App. 1907). In *Dietrich v. Heintz*, a property owner engaged an individual to manage the property and, in exchange, orally promised the worker "an interest in the premises to the extent of $4,000, which he should receive from any sale of the lot." *Id.* at 417–18. When the worker later sought to enforce the property owner's promise, the court held that it was "obvious" his interest was "an interest, to the

extent of $4,000, in land," and that a written agreement would be required to enforce that right. *Id.*

Likewise, in *Kelley v. Marlin*, the plaintiff sought a declaratory judgment clarifying the terms of a will that devised the decedent's estate to his surviving wife, but also specified that the plaintiff was to serve as the sole real estate agent, entitled to a commission, for the sale of any of the real estate so devised. 714 S.W.2d 303, 305 (Tex. 1986). The Supreme Court of Texas held that the will, by promising the plaintiff a future role in and profit from the sale of the land, made him "a conditional beneficiary" such that he had an "interest" that was "an equitable charge upon the land." *Id.*

The Barton entities' interests qualify as interests in realty under this unbroken line of clearly applicable caselaw. The Barton entities transferred realty to the DLP entities, in consideration of which the DLP entities conveyed to the Barton entities "interest[s] in the premises," *Dietrich*, 99 S.W. at 417–18, that will accrue when the properties themselves are sold. That was the clear goal of the parties. The memoranda of agreement recite the Barton entities' "right to participate in the Achieved Increased Value" of the real property that includes a

share of proceeds "arising from any near-term sale or condemnation of all or any portion of the Property," **ROA.2761**; **ROA.2773**, and that these rights are to "be construed as covenants running with the land throughout the term of the Participation Agreement" and as "binding upon . . . the heirs, successors, assigns, executors and administrators of the parties." **ROA.2763**; **ROA.2774**. Underscoring the fact that these interests were in realty, the Receiver's settlement agreement required, as part of the sale of those interests, that a quitclaim instrument be filed of public record to dispose of the Barton entities' interests in the Orchard Farms and Marine Creek estates. **ROA.2688**. No such instrument would have been required if no realty interests were in play.

In sum, the Barton interests have unaccrued realty interests in the land at issue. The DLP entities conveyed those interests in consideration of the sale of the land itself, and they will not accrue until "the Achieved Increased Value" is reached, or the land is sold. Until then, those interests lie with the land and are a charge against it. The interests the Receiver attempted to release in his agreement are, therefore, interests in the land and cannot be sold without satisfying 28 U.S.C. § 2001.

### B. The Receiver's sale in violation of the statute is contrary to the best interests of the receivership estate.

Congress enacted Section 2001 of Title 28 to ensure that receivers entrusted with the care of a third-party's property do not sell it without some procedures protecting the best interests of that third party. Congress enacted the statute "to protect against the high opportunity for fraud inherent in private sales of realty." *SEC v. T-Bar Res., LLC*, No. CIV.A.3:07CV1994-B, 2008 WL 4790987, at *4 (N.D. Tex. Oct. 28, 2008). That is why the statute requires that a receiver provide notice to all interested parties of a proposed sale, that any sale be supported by independent valuations, and that no interest in property be sold for less than two-thirds of its appraised value. 28 U.S.C. § 2001(b). The Fifth Circuit has expressed its concern with ensuring these requirements are met such that any attempted sale in violation of the statute must be reversed and rendered void, without further analysis. *Acadia Land Co.*, 110 F.2d at 354.

Here, none of the procedural protections set forth in the statute was satisfied at the district court level. The Receiver provided neither statutory notice nor appraisals. The final contract price disposed of more than $20 million of property rights for $750,000. This is four percent of

the value of the realty interests, nowhere in remote sight of the two-thirds of appraised value requirement set by Congress. Had the Receiver complied with the statute, this unjustified loss to the estate would have been scrutinized and likely would have been stopped.

The Receiver presented no legitimate justification for its decision to sale the estate's property interests on the time and terms in which the contract was consummated. At the time of the District Court's order confirming the sale to DLP, the receivership had been in place for two months. **ROA.605** (appointing the Receiver on October 18, 2022); **ROA.2787** (confirming sale on December 21, 2022). The Receiver then was still claiming to be in the process of trying to get a grasp on the assets and businesses of the estate, and to gather funds belonging to it. **ROA.1215–16**. Not only did the Receiver not understand the businesses, he also did not understand the contractual obligations and duties of the businesses under his control. *See, e.g.*, **ROA.2680–81**. It is for that reason, to allow the Receiver to come up to speed, that the District Court's Receivership Order stayed "[a]ll civil legal proceedings of any nature" that involve "the Receiver . . . any Receivership Property . . . any of the Receivership Entities . . . or, . . . any of the Receivership Entities' past or

present officers, [etc.]." **ROA.621**. The state of the receivership was thus not one in flux and not in which decisions needed to be made to liquidate important contractual and property interests of the estate. It certainly was not the time to dispose of some of the most valuable assets under the Receiver's control.

Indeed, dumping an asset worth more than $20 million dollars for some short-term cash fix of a few hundred thousand is inimical to the purpose of a prejudgment receivership. There is no evidence of, much less a judgment for, wrongdoing on the part of the Appellant, such that it is now time not only to gather all his assets but also to start liquidating them to satisfy a judgment. A prejudgment receivership, at its outer limits, is for the safekeeping of assets and preservation of the status quo until liability can be finally determined, and the assets returned to the defendant or used to address some liability the SEC actually has been able to prove. *See Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (reiterating "strong reservations" as to receivership liquidations); *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) (criticizing "the use of receivers to effect the [liquidation] of a defendant firm in litigation under the Securities Act or the Securities Exchange Act"); *SEC v. Current*

*Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992) ("The further step of liquidating Current's assets or declaring bankruptcy is not necessary to protect Current's investors nor are such drastic measures appropriate prior to the entry of final judgment."). There is no universe in which throwing away a $20 million asset for pennies on the dollar can be squared with the purpose of a prejudgment receivership. To permit it was an abuse of discretion by the District Court.

There also was no acute cash-related need to fire-sale valuable assets of the estate in its second month. When the Receiver filed his motion seeking confirmation of the DLP sale claiming to need to "bring[] much needed capital into the Receivership Estate," **ROA.2681**, the factual record reflects the opposite. On *the same day* that the Receiver moved for the District Court's approval of the DLP agreement, the Receiver entered into a contract to sell the Frisco Gate property for $9 million. **ROA.2791** (stating December 15, 2022 contract date); *see* **ROA.2677** (Motion to Ratify Agreement made on December 15, 2022). As the Receiver admitted, the Frisco Gate sale will net "approximately $2 [million]" in cash for the receivership estate. **ROA.2997**. But the Receiver put the Frisco sale in his back pocket, chose not to disclose to

the Court it was coming, claimed that same day that the DLP sale needed to be approved to solve an asserted cash crisis, **ROA.2681**, and waited to move for approval of that Frisco Gate sale until *one day* after the District Court's order ratifying the Receiver's agreement with DLP. **ROA.2787**. It is impossible to square the Receiver's chosen order of presenting matters to the Court and selective nondisclosures of other assets incoming to the estate with the Receiver's claimed cash crisis as a justification for the DLP sale or his duty of full candor to the Court. With the Frisco Gate sale poised to solve any liquidity problems, any claimed cash crisis was easily fixed and it made little sense to sacrifice over $20 million instead.

Since the DLP sale was confirmed, the Receiver has not identified any cost or expense of any receivership entity requiring the influx of $750,000 in the opening days. In fact, the Receiver admitted in a district-court filing that the "rental income" from a single property was "$108,460.28" for the Fourth Quarter of 2022, while the "[t]otal expenses" for the receivership estate over that same period amounted to "$110,594.98." **ROA.3224**. In short, the income from a single property came only $2,134.70 shy of covering the expenses of the entire

receivership estate. The existing funds from the opening days of the estate—not even considering the additional $2 million in cash resulting from the Frisco Gate sale—have been more than sufficient to pay the estate's ordinary expenses. Indeed, the only thing that the Receiver has done with the $750,000 received from the DLP sale is to use those funds to pay his professional fees and those of his partners at the litigation firm from which he hails. Specifically, the Receiver sought a $349,868.70 fee award just eight weeks after the Court's approval of the DLP order, and the District Court quickly approved it over the Appellant's opposition, despite most receivers awaiting winding up of the estate for payment of professional fees. **ROA.3455**; ECF No. 195 (district-court order approving fee application). Such payments at the outset have only served to dissipate the estate's assets. *See, e.g., SEC v. ABS Manager, LLC*, No. 13CV319-GPC JMA, 2013 WL 1164413, at *8 (S.D. Cal. Mar. 20, 2013). And they are no reason to sacrifice over $20 million in realty interests for $750,000 simply to pay a receiver's bills, which could be paid through other cash and property of the estate.

In sum, the Receiver's lack of legitimate justification for its sale of the property underscores the emphasis this Court has placed on the

statutory requirements and safeguards set forth in 28 U.S.C. § 2001(b). But the District Court ignored every red flag, proceeding instead to pen a conclusory approval of the Receiver's request to liquidate over $20 million in assets for pennies on the dollar. For good reason, that sale is void and reversible as a matter of law on procedural grounds. *See Acadia Land Co.*, 110 F.2d at 354. And, such a transaction cannot, under the circumstances, be in the best interests of the receivership estate. Approving the sale was an abuse of discretion.

### C. The District Court's Errors in Appointing and Empowering the Receiver Require Reversal of the DLP Sale Order.

The Appellant also is separately appealing the District Court's order appointing the Receiver and seizing what became 164 corporations, based solely on the SEC's allegation that several lending transactions violated the Securities Exchange Act of 1934. The District Court blew through the Appellant's property rights, without any showing that seizing all the Appellant's property was necessary to prevent asset flight (after all, nearly all the subject assets are Texas real estate). *Netsphere,* 703 F.3d at 305. Nor was any showing made that corporations or assets accumulated over the 30-year course of the Appellant's business had

anything to do with the SEC's allegations about particular lending agreements in 2017 and 2018. *Janvey*, 588 F.3d at 834. Instead, the District Court just signed the SEC's proposed order. This receivership order could have been entered in any case the SEC claims wrongdoing; there was no effort to justify the order for this Appellant under the evidence—or not in this case—that the SEC provided.

These errors are presented in Appeal No. 22-11132 before this Court and scheduled to be argued on May 1, 2023. Findings of error in that case should lead to the summary reversal of the order approving the DLP sale at issue in the instant appeal. In particular, the District Court's error of bypassing the Commission's recommendation of a receiver with experience in real estate for a trial lawyer with which he is familiar is amplified in the District Court's approval of the DLP sale. In other settings, Congress has recognized that managing a real estate development business requires special skill and that a receiver appointed over a real estate business must have experience in that industry. *See* 28 U.S.C. § 3103(b)(1)(B). Although the District Court provided no detail for its finding the sale was in the best interest of the estate, one of the Receiver's excuses for the sale was that he lacked the capacity to carry

out whatever minimal development responsibilities remained in bring the development to full fruition. **ROA.2680–81**. For $20 million, perhaps he should have hired someone. But this particular excuse would not have been a problem if the District Court had not abused his discretion and eschewed appointment of a receiver experienced in real estate development. That error made the Receiver's attempts recklessly to liquidate assets rather than manage them to maturity a predictable *fait accompli*. And the District Court's approval of the DLP sale should be reversed for that reason too.

## V. Conclusion

The District Court's failure to apply 28 U.S.C. § 2001 and its holding that the Receiver need not satisfy that statute were errors of law. Errors of law are, "by definition," abuses of discretion. *Koon*, 518 U.S. at 100. The District Court further abused its discretion when finding the proposed sale in the best interests of the estate. This Court should therefore reverse the District Court, remand with instructions to declare the Receiver's transaction with DLP to be void, and further instruct that any sale of realty interests like those at issue here must take place under the conditions prescribed in 28 U.S.C. § 2001.

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

*<u>/s/ Michael J. Edney</u>*
Michael J. Edney
Michael Dingman
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*
*mdingman@huntonak.com*

Ted A. Huffman
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
(214) 979-3000
*thuffman@huntonak.com*

ATTORNEYS FOR APPELLANT
TIMOTHY LYNCH BARTON

April 11, 2023

## Certificate of Filing and Service

I hereby certify that on April 11, 2023, this brief was filed and served in PDF format using the United States Court of Appeals for the Fifth Circuit's CM/ECF system upon all counsel of record, as follows:

Ezekiel L. Hill
hillez@sec.gov
Securities and Exchange Commission
100 F St., N.E.
Washington, DC 20549

Keefe M. Bernstein
bernsteink@sec.gov
James E. Etri
etrij@sec.gov
David B. Reece
reeced@sec.gov
Securities and Exchange Commission
801 Cherry St., Suite 1900
Fort Worth, TX 76102

*Counsel for the Securities and Exchange Commission*

In addition, I further certify that this electronic filing is an exact copy of the paper document and any privacy redactions have been made. This filing has been scanned for viruses and has been found to be free of viruses.

*/s/ Michael J. Edney*

## Certificate of Compliance

I hereby certify that this document complies with the word limit of Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 6,925 words, as calculated using the word processor used to prepare this document, Microsoft Word for Microsoft 365. I also certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Michael J. Edney*